396 So.2d 184 (1981)
Gary Eldon ALVORD, a/K/a Paul Robert Brock, a/K/a Gary Eldon Venczel, Appellant,
v.
STATE of Florida, Appellee.
No. 57810.
Supreme Court of Florida.
April 9, 1981.
Rehearing Denied April 16, 1981.
*185 William J. Sheppard, Jacksonville, Stephen D. Stitt, Gainesville, Jack Greenberg, New York City, and Anthony G. Amsterdam, Stanford, Cal., for appellant.
Jim Smith, Atty. Gen., and Carolyn M. Snurkowski, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
This is an appeal by the appellant, Gary Eldon Alvord, from a denial of post-conviction relief. Alvord was convicted in 1974 of three counts of first-degree murder for the strangulation of three women.
This is the third time this cause has been before this Court for review. An abbreviated chronology of the judicial proceedings is as follows.
The appellant was convicted of the murder charges on April 9, 1974. On September 17, 1975, this Court affirmed those convictions in its decision reported in Alvord v. State, 322 So.2d 533 (Fla. 1975). Appellant thereupon sought review by certiorari to the United States Supreme Court, which was denied on July 6, 1976. Alvord v. Florida, 428 U.S. 923, 96 S.Ct. 3234, 49 L.Ed.2d 1226, rehearing denied, 429 U.S. 874, 97 S.Ct. 195, 50 L.Ed.2d 157 (1976).
In his first collateral attack upon this conviction, appellant filed a motion for reduction of sentence under Florida Rule of Criminal Procedure 3.800(b) on November 29, 1976. The trial court denied the motion, finding it was without jurisdiction. Appellant then sought review of this action by petition for writ of mandamus, which was denied by this Court in an unreported order on March 10, 1977.
The instant case arises from a second collateral attack upon the convictions, commenced on October 6, 1978, by filing a motion for post-conviction relief under the provisions of Florida Rule of Criminal Procedure 3.850, to which two supplements were filed. Consideration was delayed by these supplements and by appellant's pro se motion that his counsel withdraw. Appellant contends in his motion that:
(1) The trial court failed to respond to appellant's pro se request to have the public defender removed as counsel and have private counsel appointed.
(2) Trial counsel was incompetent because he did not file a notice of intent to claim insanity as a defense.
(3) The trial court erred by failing to instruct the jury on its own initiative that appellant had a past history of mental illness, had previously been adjudicated insane, and should be presumed insane until such presumption was overcome by proof beyond every reasonable doubt.
*186 (4) Counsel on the initial appeal was incompetent for failing to raise the following issues: (a) whether the trial court erred in setting aside its order sending appellant to a state institution for observation to determine his sanity; (b) whether the trial court erred in allowing Dr. Ames Robey to examine defendant and testify regarding defendant's mental condition; and (c) whether the trial court erred in allowing Dr. Robey to testify regarding defendant's past criminal history during the sentencing phase.
(5) He was denied an adequate psychiatric examination on the question of his sanity on the date of the offenses.
(6) The interrogation of appellant by a Michigan detective was contrary to the principles set forth in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), because the detective neglected to read appellant the warnings as printed on the police form and failed to have appellant execute a written waiver of his constitutional rights.
(7) The death penalty has been administered and applied in a manner inconsistent with the principles in State v. Dixon, 283 So.2d 1 (Fla. 1973), and Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).
(8) The death penalty in Florida has been and is being applied pursuant to a practice which discriminates on the grounds of sex and poverty.
(9) Prosecutors and courts employ the death sentence as a penalty for the exercise of a defendant's right to a jury trial by a regular and uniform practice of declining to seek or impose the death sentence when the defendant pleads guilty although those cases are factually indistinguishable from those in which the defendant pleads not guilty and is sentenced to death after a jury trial.
(10) The imposition of the death sentence in this case is cruel and unusual because of all the relevant facts, including appellant's lengthy history of mental illness.
(11) Section 921.141, Florida Statutes (1973), is a matter of judicial practice and procedure and consequently violates article V, section 2(a), of the Florida Constitution.
(12) The death penalty is unconstitutional as applied to appellant because it is administered arbitrarily and discriminatorily to punish the killing of white persons as opposed to black persons.
(13) It was error for the trial court to fail to excuse for cause a venireman who indicated he felt everyone convicted of first-degree murder should receive the death penalty. The venireman was later excused peremptorily by appellant.
(14) The death sentence was imposed although none of the aggravating circumstances found to support the death sentence were alleged in the indictment and none were found to exist beyond a reasonable doubt.
(15) The consideration of mitigating circumstances was impermissibly restricted by the trial judge, contrary to the standards of Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).
After an evidentiary hearing and a clearly exhaustive review of the record, the trial judge denied this petition for post-conviction relief. The trial judge recognized that the principal assertion was directed to the competency and effectiveness of counsel at both trial and appellate levels. In his extensive order, the trial judge made the following specific findings:
[T]he Defendant had committed an offense in 1967 in the State of Michigan involving the kidnapping and rape of a young girl. He was tried before the Court without a jury and on the 12th day of May, 1970 was found not guilty of those offenses by reason of insanity and he was committed to the Michigan Department of Mental Health. He escaped from the Ionia State Hospital in Michigan on January 24th, 1973, came to Florida, and on June 17th, 1973 committed the three murders for which he was subsequently convicted and sentenced to death.
The Court appointed the Public Defender's Office to represent the Defendant and although he made several requests *187 for appointment of private counsel, each of which was denied by the Court, he was ultimately represented in the trial of this cause by Thomas Meyers, an Assistant Public Defender. The Defendant did not object to Thomas Meyers, Esquire individually, but he objected to being represented by the office of the Public Defender... . This was in response to an inquiry by Mr. Meyers to determine if the Defendant objected to Mr. Meyers individually with the intention of requesting the Public Defender to appoint another Assistant to represent the Defendant if that was the basis of the Defendant's objection. .. . The Court had no authority to appoint anyone other than the Public Defender unless there was a conflict of interest involved. The Court even suggested to Mr. Meyers that if he felt that due to the difficulty he was encountering at that point in representing the Defendant that the Public Defender's Office could file an appropriate motion to be relieved and that the Court would consider the same. This is reflected by the portion of the transcript contained in the Defendant's appendix beginning on page 43.
"THE COURT: I would appreciate that. As far as  are you making a motion to discharge you counsel? Are you doing that now?
THE DEFENDANT: Yes sir. I have no faith in any persons representing the Public Defender's Office.
THE COURT: Well, I am going to let you take this up with the Public Defender, as far as  you might accommodate him in filing a written motion, Mr. Meyers, if you so desire. The Court may, since this is such a serious offense where three first degree murders are involved, as a precautionary matter, and in no way reflecting on your competency, because I have seen you try many cases, the Court may consider appointing him private counsel.
MR. MEYERS: I would not object, your Honor.
THE COURT: Well, I don't want you to take this as a castigation of your character or your ability to try cases, because I have seen you try many cases before me and other courts, and I have no doubt of your ability. But you might accomodate [sic] him in filing such a motion, and the Court may consider giving him private counsel. Of course, I can't guarantee him that the private counsel, his opinion of the private counsel may be even as bad or worse than that he has of you at the present. I can't control that."
Thereafter this apparent dissatisfaction with Mr. Meyers was apparently resolved as is reflected by the colloquy contained in Defendant's appendix at page 60:
"MR. MEYERS: I would state into the record that I have advised, as the attorney for the defendant, that he do cooperate with the two court-appointed psychiatrists, and that his refusal to talk with the doctors is strictly on his own initiative and not at all prompted by any advice or suggestion by me.
Is that correct, Mr. Alvord? You have come to this decision on your own not to talk with the psychiatrists[?]
THE DEFENDANT: The court gave me the impression I would have another lawyer. So, I considered myself without a lawyer.
MR. MEYERS: Well, did I talk with you on the 9th of this month, subsequent to your appearance in Court last week?
THE DEFENDANT: Yes.
MR. MEYERS: And did you fully cooperate with me then to the extent that you could and at that time concurred that I would by [sic] your lawyer?
Other than this one factor, (refusal to be examined by the two court-appointed psychiatrists) Judge, he was very cooperative."
This cooperation between the Defendant and Mr. Meyers obviously continued throughout the balance of the proceedings before the trial Court and after sentencing. *188 In a letter directed to Dr. Ames Roby [sic] dated January 5th, 1975 the Defendant's relationship with Mr. Meyers was stated as follows:
"Tom Meyers and I still correspond. He sure is a good guy. He's always trying to help in what ways he can and he really has no reason to. I seldom ask for anything but he lets me know that he's willing."
The Defendant seems to have a penchant for "firing" his attorney. After his Motion for Post Conviction Relief was filed in this cause the Court received a pro-se document dated the 27th day of November, 1978 in which the Defendant stated "Said Gary E. Alvord on this date wishes/request [sic] of this Honorable court to drop his appeal and all attorneys/or persons assisting in said appeal." This pleading was directed to the representation by the Defendant's present counsel who are unquestionably competent and dedicated to the Defendant's cause. Thereafter, by document dated the 12th day of February, 1979 the Defendant withdrew his pro-se pleading.
The Court finds that the Defendant ultimately consented to being represented by Assistant Public Defender Thomas Meyers, that he fully cooperated with Mr. Meyers in the preparation of the case for trial (other than submitted to examination by the court-appointed psychiatrists and that the trial Court did not commit error in failing to appoint private counsel to represent the Defendant.
On the issue of trial counsel's asserted incompetence for not filing a notice of intent to claim insanity as a defense, the trial court found:
As stated in the Defendant's Motion for Post Conviction relief, trial counsel was aware of the Defendant's history of mental problems. On March 5th, 1974, Mr. Meyers requested copies of the Defendant's medical history from the State of Michigan and included therein a consent to the release of such information executed by the Defendant. Trial counsel was aware of the Defendant's adjudication of insanity and that he was presumed to remain incompetent until adjudicated otherwise... . The record is replete with various pre-trial motions filed by Defendant's trial counsel which reflect adequate preparation and knowledge of the law applicable to the issues involved.
The Court appointed Dr.'s [sic] Gonzalez and Sprehe to conduct a psychiatric examination of the Defendant and scheduled a competency hearing to be held on the 12th day of October, 1973. At that hearing Dr.'s [sic] Gonzalez and Sprehe both advised the Court that the Defendant refused to answer any of their questions or to communicate with them in anyway [sic]. Mr. Meyers advised the Court that upon being contacted by Dr. Sprehe he immediately went to the jail and talked with the Defendant and Mr. Meyers remained of the opinion that the Defendant did need to be examined... . Thereafter the State made arrangements for Dr. Ames Roby, Director of the Center for Forensic Psychiatry in the State of Michigan to come to Florida and examine the Defendant. He did so and testified as to the Defendant's competency to stand trial on the 4th Day of January, 1974. At that hearing Dr. Roby testified that he knew the Defendant Gary Alvord quite well, he had examined the Defendant the preceding afternoon, he first met the Defendant on November 13th, 1969 for an admission evaluation, he was familiar with the Defendant's psychiatric or mental history, the Defendant conversed with him quite freely the preceding afternoon, he understood his role as a Defendant in this case, was aware that he was charged with three counts of murder in the first degree, he was more than ordinarily aware of legal procedures, he knew that he was facing the death penalty and was concerned, but felt that there was really no evidence against him. Dr. Roby testified that he talked with him about the insanity defense and in his opinion any reluctance on the part of the Defendant to cooperate would be just that  it would not be in any way based upon *189 mental illness and that there was no mental illness or desease [sic] that would prevent or preclude him from aiding and assisting his counsel. Dr. Roby testified that in his opinion the Defendant was competent to stand trial... .
At the conclusion of the hearing the following colloquy took place between the Court and counsel.
"THE COURT: Mr. Meyers, in view of the fact that this original motion was made by the defense to have the defendant examined, and upon the appointment by the two psychiatrists, the defendant saw fit not to cooperate with them. Has there been any change in the attitude of the defense as to whether or not the defendant intends to cooperate with the doctors?
MR. MEYERS: I talked with him earlier, but let me see what his attitude is now.
(Mr. Meyers conferred with the defendant.)
MR. MEYERS: He indicated he doesn't, will not cooperate with any psychiatrists. I still recommend that he do so.
THE COURT: Do you still wish to continue on your motion to have him examined?
MR. MEYERS: Yes, I do. He's going counter to my opinion and legal advice now.
THE COURT: Well, the Court is bending over backwards to try to accommodate the defendant in all his motions. And one of the motions was that he be examined by two qualified psychiatrists here in our Court, and I have granted that motion and doing everything within the Court's power to give the defense and the Court the benefit of any mental condition this man may be suffering from. But if the defendant does not desire to cooperate under these conditions and the defense of insanity is not going to be raised in this case, I see no reason we can't go to trial." ...
At that hearing the Court re-appointed Dr. Gonzalez and Dr. Sprehe to make another attempt to examine the Defendant. At the hearing held on January 11th, 1974 these two court-appointed psychiatrists testified that the Defendant had again refused to be examined by either of them. The record of that hearing also reflects that the Defendant had been further examined by Dr. Ames Roby after the previous hearing and the Assistant State's Attorney furnished the defense counsel and the Court with a copy of Dr. Roby's medical report prepared subsequent to his second examination of the Defendant, and the Court found the Defendant competent to stand trial. Subsequently, on the 8th day of February, 1974 another competency hearing was held and at that hearing Dr. Sprehe testified that the Defendant had finally permitted him to conduct a psychiatric examination on the 6th day of February, 1974 and that in his opinion the Defendant did understand the charge against him and was able to assist counsel in the preparation of his defense... .
The Defendant's trial counsel obtained copies of his medical reports from the State hospital in Michigan which reflect that in the opinion of the psychiatrists there  particularly Dr. Ames Roby and Dr. Birzgalis that the Defendant in August 1972 was no longer psychotic and that he had never at any time been overtly psychotic ... that it was questionable that he was ever psychotic and that he was hostile, defiant and manipulative but not overtly psychotic. .. . Defense counsel also had access to the medical report furnished by Dr. Ames Roby after his examination of the Defendant in the Hillsborough County jail in which he stated that the Defendant in his opinion was not insane under Florida law ("M'Naughten [sic] Rule") and also it was Dr. Roby's opinion that the Defendant was sane at the time he allegedly committed the three murders for which he was charged. The Defendant denied having committed these murders, refused to be examined by court-appointed psychiatrists *190 on the issue of his competency at the time of the commission of the offense even after having been advised that he would not be permitted to claim the defense of not guilty by reason of insanity unless he submitted to such examination. He was competent to stand trial and therefore was competent to make the decision which he made even though it was against the advice of trial counsel. It is obvious that he did not want trial counsel to assert this defense and trial counsel was well aware that should such a defense be asserted that the psychiatrists from the State of Michigan who were very familiar with the Defendant and his medical and mental history would testify that in their opinion the Defendant was sane on June 17th, 1973, the date of the offenses for which he was on trial. As observed by Judge Rawlins, trial counsel was experienced and capable and he was not called as a witness at the evidentiary hearing granted on the Defendant's Motion for Post Conviction Relief. It is obvious to the undersigned based upon full review of the trial transcript and the appendix to the Defendant's motion that trial counsel had fully advised himself of this possible defense and that the same was at most tenuous  probably fruitless  and quite possibly would weaken the Defendant's asserted defense that he had not committed the offenses for which he was on trial. The Court finds that Davis vs. Alabama, 596 F.2d 1214 (5th Cir.1979) is not applicable. In Davis it was obvious that he had committed the offense for which he was charged  he pleaded not guilty by reason of insanity  his only possible defense, but trial counsel had not properly prepared that defense. Here, Mr. Meyers had fully explored that defense, was fully cognizant of the continuing presumption of insanity which arose by virtue of the Defendant having been found not guilty by reason of insanity in Michigan in 1970 and that the laws pertaining to insanity differed between the State of Michigan and the State of Florida. What was defense counsel's duty to rescue his client from his own voluntary acts? The Defendant would not follow Mr. Meyers's [sic] suggestion that he submit to the Court ordered psychiatric examinations and it is obvious that trial counsel did everything within his power and his ability to convince the Defendant to do otherwise. There is a presumption that counsel is competent and this presumption must be overcome by the Petitioner in order for an ineffective assistance of counsel claim to lie. McQueen vs. Swenson, 498 F.2d 207, 216 (8th Cir.1974). The Defendant has failed to overcome that presumption.
This Court has attempted to delve behind the scenes by review of the voluminous material furnished at the evidentiary hearing to ascertain whether the trial counsel, either by inaction or through ill-taken action, failed to meet the standards of a reasonable, competent and devoted advocate as set forth in Freedman v. U.S., 588 F.2d 1010 (5th Cir.1979) and the Court finds that the Defendant's trial counsel was competent and devoted to the Defendant's cause.
The Defendant also claims that the trial Court erred in failing to intrust [sic] the jury sua-sponte [sic] that the Defendant had a past history of mental illness and had previously been adjudicated insane and was presumed insane until such presumption was overcome by proof beyond every reasonable doubt that the Defendant was in fact sane at the time he allegedly committed the offenses for which he was on trial. This ground for post conviction relief is also without merit. No proof of the Defendant's prior adjudication of insanity had ever been submitted to the Court and no such defense was raised. A Defendant has the burden of establishing a plea of insanity by showing that he was legally insane when he committed the criminal act. Hixon vs. State, (DCA 1964) 165 So.2d 436. The trial Court is only required to instruct the jury on issues properly raised. Since the Defense did not choose to assert the defense of insanity it would *191 have been improper for the trial Court to have instructed the jury on that issue.
The trial court concluded that it had:
considered the other grounds contained in the Defendant's Motion for Post Conviction Relief and finds that the same are either without merit, have been formerly disposed of adversely to the Defendant in the appeal of this cause, Alvord vs. State, (Fla. 1975) 322 So.2d 533, or they are not a proper ground for a motion for post conviction relief.
The principal assertion by appellant is that he was denied effective assistance of trial counsel because his counsel was unable to convince him to plead not guilty by reason of insanity. We find the record clearly sustains the finding of the trial judge and shows that the original trial counsel competently, diligently, conscientiously, and effectively represented the appellant. Counsel did all that could be done to provide appellant with effective representation and a fair trial, given the facts and circumstances of this cause. In our view, the representation provided appellant met the standard for effective assistance of counsel articulated by this Court in Knight v. State, 394 So.2d 997 (Fla. 1981).
The other issue which warrants discussion concerns the testimony of the psychiatrist, Dr. Robey, at the sentencing stage of the proceedings. The decision of Smith v. Estelle, 602 F.2d 694 (5th Cir.1979), cert. granted, 445 U.S. 926, 100 S.Ct. 1311, 63 L.Ed.2d 758 (1980), relied on substantially by the appellant, was decided subsequent to our initial review of this cause and, in our view, is not applicable. Smith held that statements made to a psychiatrist appointed to examine the defendant could not in that specific case be used in aggravation in the sentencing proceeding. We find that Smith does not apply because the issue of the propriety of Dr. Robey's testimony was raised in the initial appeal before this Court, although on another theory of law, and rejected in our original opinion on the merits. 322 So.2d at 539. Post-conviction relief is not available for a reappeal or a rereview or to raise issues that could have been raised on the initial appeal. Adams v. State, 380 So.2d 423 (Fla. 1980); Sullivan v. State, 372 So.2d 938 (Fla. 1979); Spenkelink v. State, 350 So.2d 85 (Fla.), cert. denied, 434 U.S. 960, 98 S.Ct. 492, 54 L.Ed.2d 320 (1977). Further, the Smith decision is not a change of law that warrants post-conviction relief under the doctrine we expressed in Witt v. State, 387 So.2d 922 (Fla. 1980). Even if it were applicable, Smith is distinguishable since in Alvord's case the history and critical information related at the sentencing proceeding by the psychiatrist Robey were obtained in Michigan well before the commission of the instant criminal offenses and were proper to negate the argument of mitigating factors relating to mental condition.
We find the record fails to support the allegation that appellate counsel was incompetent because he did not properly present the legal issue of appellant's competency and the testimony of the psychiatrist. The ineffectiveness of appellate counsel cannot be based upon the failure of counsel to assert a theory of law which was not at the time of the appeal fully articulated or established in the law. In our view, the appellant was provided with effective assistance of counsel on the initial appeal of this cause.
The remaining issues are without merit and have been disposed of by this court in previous proceedings or could have been raised in the initial appeal.
The order of the trial judge denying post-conviction relief is affirmed.
It is so ordered.
SUNDBERG, C.J., and ADKINS, BOYD, OVERTON, ENGLAND, ALDERMAN and McDONALD, JJ., concur.