514 So.2d 1069 (1987)
Ernest Charles DOWNS, Petitioner,
v.
Richard L. DUGGER, Respondent.
No. 71100.
Supreme Court of Florida.
September 9, 1987.
Rehearing Denied November 23, 1987.
*1070 Maurice N. Nessen and Stephen N. Young of Kramer, Levin, Nessen, Kamin & Frankel, New York City, for petitioner.
Robert A. Butterworth, Atty. Gen., and Richard E. Doran and Elizabeth Masters, Asst. Attys. Gen., Tallahassee, for respondent.
PER CURIAM.
Ernest Charles Downs, under sentence of death and the governor's death warrant, petitions this Court for extraordinary relief, writ of habeas corpus and stay of execution. We have jurisdiction. Art. V, § 3(b)(1), (7) & (9), Fla. Const. We grant the writ, stay the governor's warrant, vacate Downs' sentence of death, and remand for a new sentencing proceeding that complies with Hitchcock v. Dugger, ___ U.S. ___, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), before a jury.
In April 1977, John Barfield[1] offered Downs $5,000 to kill a Jacksonville bank executive, Forrest Jerry Harris, Jr.[2] Downs in turn enlisted the assistance of Larry Johnson, the state's star witness at the trial below. According to Johnson's immunized testimony, Downs gunned the victim down at a clandestine location while Johnson passively looked on. Hidden in a palmetto thicket, the body was not discovered for some months, and then only because Johnson arranged for a grant of total immunity in return for information and his testimony.
This Court rejected numerous claims of error filed by Downs and his counsel on direct appeal. Downs v. State, 386 So.2d 788 (Fla.), cert. denied, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 238 (1980). We later rejected a collateral attack under Rule 3.850, Florida Rules of Criminal Procedure, Downs v. State, 453 So.2d 1102 (Fla. 1984), and an initial petition for habeas relief. Downs v. Wainwright, 476 So.2d 654 (Fla. 1985).
We now find that a substantial change in the law has occurred that requires us to reconsider issues first raised on direct appeal and then in Downs' prior collateral challenges. Earlier this year, the United States Supreme Court issued its opinion in Hitchcock, which examined Florida's death penalty statute in light of Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) and Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). Lockett held that the sentencer in a capital trial may
not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death... . Given that the imposition of death by public authority is so profoundly different from all other penalties, we cannot avoid the conclusion that an individualized decision is essential in capital cases. The need for treating each defendant in a capital case with that degree of respect due the uniqueness of the individual is far more important than in noncapital cases.
438 U.S. at 604-05, 98 S.Ct. at 2964-65, (emphasis in original, footnote omitted). Eddings held that

*1071 [j]ust as the State may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, as a matter of law, any relevant mitigating evidence.... The sentencer, and the Court of Criminal Appeals on review, may determine the weight to be given relevant mitigating evidence. But they may not give it no weight by excluding such evidence from their consideration.
Eddings v. Oklahoma, 455 U.S. at 113-15, 102 S.Ct. at 876-77 (emphasis in original, footnote omitted).
Hitchcock rejected a prior line of cases issued by this Court, which had held that the mere opportunity to present nonstatutory mitigating evidence was sufficient to meet Lockett requirements. Under this "mere presentation" standard, we routinely declined to consider whether the judge or jury actually weighed the evidence in question. A consideration of the history behind Hitchcock illuminates this Court's prior standard of review and the Supreme Court's reaction to it.
In Hitchcock's collateral challenge under Rule 3.850, this Court expressly had rejected his claim that a mere presentation standard was insufficient to meet Lockett:
The record refutes the contention that Hitchcock was deprived of presentation or consideration of nonstatutory mitigating circumstances. His counsel both presented and argued nonstatutory mitigating circumstances.
Hitchcock v. State, 432 So.2d 42, 44 (Fla. 1983) (McDonald & Overton, JJ., concurring with opinion). This statement elaborated upon this Court's earlier pronouncement on direct appeal that Hitchcock
presented only one witness [during sentencing]. There is nothing in the record indicating that the trial judge limited the defense's presentation.
Hitchcock v. State, 413 So.2d 741, 748 (Fla.), cert. denied, 459 U.S. 960, 103 S.Ct. 274, 74 L.Ed.2d 213 (1982). With this comment, we thus rejected Hitchcock's claim of a Lockett violation based on our conclusion that a judge and jury "consider" mitigating evidence by receiving it.
On review, the Supreme Court was unpersuaded by our reasoning. It held that the record in Hitchcock reflected a Lockett violation:
[T]he members of the jury were told by the trial judge that he would instruct them "on the factors in aggravation and mitigation that you may consider under our law." ... He then instructed them that "[t]he mitigating circumstances which you may consider shall be the following... ." (listing the statutory mitigating circumstances).
107 S.Ct. at 1824 (citations omitted). The Supreme Court further noted that the trial judge, in imposing sentence, expressly weighed only those mitigating factors enumerated in the death penalty statute. Id.
We thus can think of no clearer rejection of the "mere presentation" standard reflected in the prior opinions of this Court, and conclude that this standard no longer can be considered controlling law. Under Hitchcock, the mere opportunity to present nonstatutory mitigating evidence does not meet constitutional requirements if the judge believes, or the jury is led to believe, that some of that evidence may not be weighed during the formulation of an advisory opinion or during sentencing. As we recently have stated,
The United States Supreme Court [in Hitchcock] clearly rejected the "mere presentation" standard, finding that a Lockett violation had occurred. 107 S.Ct. at 1824. The Court made clear that the fact that the judge and jury heard nonstatutory mitigating evidence is insufficient if the record shows that they restricted their consideration only to statutory mitigating factors.
Riley v. Wainwright, No. 69,563 (Fla.Sept. 3, 1987), slip op. at 7 (footnote omitted). Accord Thompson v. Dugger, 515 So.2d 173 (Fla. 1987) (consolidated cases).
Turning now to the facts of this case, we find that the factual situation presented by Hitchcock also exists here in substantially identical form. The trial court, just as in Hitchcock, instructed the jury that they must determine

*1072 whether sufficient aggravating circumstances exist to justify imposition of the death penalty and whether such sufficient mitigating circumstances exist to outweigh any aggravating circumstances found to exist... .
The mitigating circumstances which you may consider, if established by the evidence, are these: [listing only the seven statutory mitigating factors].
We find this language substantially similar to the improper instruction given the jury in Hitchcock. Moreover, we note that the prosecuting attorney in this case exacerbated the Lockett error:
The Court will tell you what the mitigating factors are that you may consider... . [T]he judge is going to tell you what they are, going to read all of the factors that the legislature, representing the people of this state, said that you, the jury, should consider, that is the law that you should consider.
The judge further reinforced the impression already laid in jurors minds by providing them with a copy of the statutory aggravating and mitigating factors for use during their deliberations:
Members of the jury panel, I'm going to ask for you to retire to the jury room at this time to begin your deliberations, and I will send this form back and I will also send a written copy of the instructions, particularly so that you will have a list of the aggravating and mitigating factors.
These instructions to the jury unconstitutionally restricted the review of nonstatutory mitigating evidence, in violation of Hitchcock and Lockett.
The state argues that even if we find error, it was harmless. However, the jury in this case clearly was troubled by potential mitigating evidence, as reflected in a question posed to the judge regarding a firearms charge of which Downs stood accused:
In regard to the question as to whether the defendant did or did not use a firearm, must the defendant be guilty of actually pulling the trigger, or is he guilty of using the firearm through association of being an accomplice in a murder of which a firearm was used.
This Court previously has recognized as mitigating the fact that an accomplice in the crime in question, who was of equal or greater culpability, received a lesser sentence than the accused. E.g., Gafford v. State, 387 So.2d 333 (Fla. 1980); Slater v. State, 316 So.2d 539, 542 (Fla. 1975). The question posed by the jury plainly shows that they considered that Downs' accomplice, Johnson, may have been of equal or greater guilt. This, along with other mitigating evidence that was presented, precludes any finding of harmless error beyond a reasonable doubt in this case.
Thus, in light of the requirements established by the United States Supreme Court in Hitchcock, we grant the writ, stay the governor's warrant, and vacate Downs' sentence of death, remanding for a new sentencing proceeding before a jury that complies with Hitchcock.
It is so ordered.
McDONALD, C.J., and OVERTON, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
EHRLICH, J., concurs in result only.
NOTES
[1] A codefendant in this cause, Barfield was tried separately and sentenced to death despite a jury recommendation of life in prison. This Court subsequently held that the jury override was improper, and reduced the penalty to life. Barfield v. State, 402 So.2d 377 (Fla. 1981).
[2] This contract killing was part of a conspiracy that included at least four other men. Two, Larry Johnson and Huey Austin Palmer, received complete immunity from prosecution or had all charges dropped. Another, Gerry Ralph Sapp, accepted a five-year plea bargain. The last, Ron Garelick, died when his private plane crashed only two days after the victim's body was discovered.