513 So.2d 659 (1987)
David Ross DELAP, Sr., Petitioner,
v.
Richard L. DUGGER, Etc., Respondent.
No. 71194.
Supreme Court of Florida.
October 8, 1987.
Gerry S. Gibson of Steel, Hector & Davis, Miami, and Richard L. Jorandby, Public Defender, Fifteenth Judicial Circuit, and Craig S. Barnard, Chief Asst. Public Defender, West Palm Beach, for petitioner.
Robert A. Butterworth, Atty. Gen., and Lee Rosenthal, Richard Bartmon, and Amy Lynn Diem, Asst. Attys. Gen., West Palm Beach, for respondent.
PER CURIAM.
David Ross Delap, Sr., under a sentence and warrant of death, petitions this Court for a writ of habeas corpus, seeking a new sentencing hearing. He also moves the Court to stay his execution which is set for October 15. We have jurisdiction. Art. V, § 3(b)(9), Fla. Const.
Delap was twice found guilty of the abduction, robbery, sexual abuse and murder *660 of Paula Ethridge in Okeechoobee.[1] Upon his second conviction, he appealed to this Court, which affirmed the judgment and sentence. Delap v. State, 440 So.2d 1242 (Fla. 1983), cert. denied, 467 U.S. 1264, 104 S.Ct. 3559, 82 L.Ed.2d 860 (1984). This Court rejected Delap's argument that the requirements of Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), had been violated. Thereafter, this Court affirmed the denial of a motion under rule 3.850, Florida Rules of Criminal Procedure. Delap v. State, 505 So.2d 1321 (Fla. 1987).
Delap now argues that this Court should rehear his Lockett claim in light of Hitchcock v. Florida, ___ U.S. ___, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), wherein the Supreme Court of the United States held that when a judge and jury are limited in their consideration of mitigating evidence a new sentencing hearing is mandated under the principles of Lockett. Because Hitchcock represents a substantial change in the law occurring since we first affirmed Delap's sentence, we are constrained to readdress his Lockett claim on its merits. Downs v. Dugger, 514 So.2d 1069 (Fla. 1987); Thompson v. Dugger, 515 So.2d 173 (Fla. 1987).

THE BACKGROUND
The facts of the murder.
A complete account of the crime is set out at 440 So.2d 1245-46, but we will provide a precis here. Delap was accused in 1975 of abducting Ms. Ethridge from a coin laundry, forcibly holding her in his car to prevent her desperate attempts to escape and driving her to a secluded area, where he robbed her of her purse, committed involuntary sexual battery upon her, and killed her, either through strangulation, beating, or a combination of the two.
The circumstances of the trial.
Delap was brought to trial a second time in 1979. In the penalty phase, the court placed no limitations on what the defense could present, but, in fact, only one witness, a psychiatrist-neurologist, testified for the defense. He testified that while Delap was sane, he had an "essentially unstable personality, with sociopathic features." The doctor expressed the opinion that he suffered from a mild organic brain disorder and that he had abused drugs and alcohol on the day of the murder, exaggerating his tendency to commit the crime and making him less aware of the consequences of his actions. There was no evidence that Delap had, in fact, used drugs on the day of the murder other than Delap's recent statement to the doctor, and the doctor admitted that Delap had failed to point this out in previous interviews. The state presented two doctors who said that Delap was not under the influence of extreme mental or emotional duress and did not have impaired mental faculties at the time of the crime.
At the charge conference defense counsel made several objections to the jury instructions but did not, at that time, object to the fact that they did not explain that the jury could consider nonstatutory mitigating circumstances.[2] The prosecutor did, however, point out to the judge that while the state could rely only on the statutory aggravating circumstances, the defendant was "not limited to the enumerated mitigating circumstances." In closing arguments the prosecutor discussed the list of statutory mitigating factors but told the jurors they were not limited to considering them. After the closing arguments but before the judge was to begin reading the jury instructions, defense counsel, at a sidebar conference out of the hearing of the court reporter, apparently moved the court to give an instruction that informed the jury it could consider any evidence in *661 mitigation. The court refused and later put on the record that it did so because the motion was not timely made. The then-existing standard jury instructions were read, and the jury was not instructed by the court that it could consider factors beyond those in the instructions. Upon the request of the jury, the judge later furnished the jury with a copy of the entire jury instructions, and Delap's lawyer objected to the lack of reference to nonstatutory mitigating circumstances. Finally, the jury, by a majority, recommended death.
The trial judge did not sentence Delap for more than four months. During that time he received written memoranda from counsel arguing the merits and demerits of the death penalty and made a trip to the state prison, where he toured the facility and checked Delap's conduct during his stay on death row.[3] The court found six aggravating factors, of which five survived appellate review: that the murder was committed by a person under sentence of imprisonment, that Delap was previously convicted of another felony involving the use or threat of violence to the person, that Delap created a great risk to many persons in the commission of the crime, that the crime was committed while engaged in the commission of a kidnapping, robbery and rape, and that the killing was especially heinous, atrocious or cruel. In his written findings in conformity with section 921.141(3), the court found that none of the statutory mitigating factors applied but did find Delap's behavior at trial and in prison and the possibility of remorse as mitigating factors.

THIS PETITION
The standard jury instruction given in this case was similar to the one which the United States Supreme Court in Hitchcock ruled inadequate because it failed to explain that the jury could take into consideration nonstatutory mitigating evidence.[4] *662 The fact that Delap's request for a proper instruction was late is not significant to our decision because in Hitchcock the impropriety of the instruction was not even raised at the trial. Delap argues that because the jury was improperly instructed on the law, the entire sentencing process was tainted. The state responds that the ultimate focus is on the judge, not the jury, and the record clearly shows that the judge was aware that he had to consider all mitigating evidence and did in fact consider mitigating evidence. The state further points out that while this Court has reversed some death sentences for Hitchcock violations, in each case there was an additional element that required reversal besides the faulty jury instruction.[5]
The state urges this Court to adopt the approach to the Hitchcock issue recently taken in Elledge v. Dugger, 823 F.2d 1439 (11th Cir.1987), in which the Eleventh Circuit Court of Appeals stated that "Hitchcock did not create a per se rule of reversal when the trial judge gives a particular jury instruction." Id. at 1448. The opinion went on to say that these cases must be determined by their facts and focused its attention on the judge's view of the law because in Florida the judge, rather than the jury, is the sentencer. Thus, giving the faulty standard jury instruction does not mandate reversal if the jury is not otherwise directed to ignore nonstatutory mitigating evidence and if the judge is aware that such evidence is properly considered. Cf. Magill v. Dugger, 824 F.2d 879 (11th Cir.1987) (sentence reversed where faulty instruction given, and judge sustained objection to introduction of nonstatutory mitigating evidence).
The circumstances in Hitchcock were substantially different from what occurred in the instant case. The prosecutor told the jury that it should "consider the mitigating circumstances and consider them by number." In the sentencing order the trial judge referred to "insufficient mitigating circumstances as enumerated in Florida Statute 921.141(6) to outweigh the aggravating circumstances." The judge observed that he was mandated to apply the facts to certain enumerated aggravating and mitigating circumstances.
In contrast, the prosecutor at Delap's trial told the jury that it was not limited to considering the statutory list of mitigating factors. Moreover, it is obvious that the judge knew that nonstatutory mitigating factors could be considered because he did so, even to the point of going to Raiford in his search. In his sentencing order he referred to nonstatutory mitigating factors. His refusal to give the requested instruction on nonstatutory mitigating evidence was based on the tardiness of the request and not on the merits.
In Hitchcock the Supreme Court acknowledged that its reasoning was subject to the harmless error analysis. We find such analysis to be dispositive of the instant case. The defense was not limited in its introduction of nonstatutory mitigating evidence. While the instruction was inadequate, the judge never explicitly told the jury that it could not consider nonstatutory mitigating evidence. In fact, the prosecutor went out of his way to explain that such evidence could be considered. Moreover, when balanced against the five aggravating circumstances, the mitigating evidence was very weak. The medical evidence was directed toward the statutory mitigation of extreme emotional duress, and in our prior opinion we concluded that the court had properly rejected this contention. 440 So.2d at 1257. As for nonstatutory mitigating evidence, the judge only found that Delap's trial and prison conduct were "acceptable" and that "perhaps" there was some remorse. There were no *663 other nonstatutory mitigating circumstances sufficient to offset the aggravating circumstances upon which the jury could reasonably have predicated a recommendation for life imprisonment. Considering the totality of the circumstances, we conclude that the giving of the faulty jury instruction had no effect upon the jury's recommendation and the judge's rendition of the death penalty.
Therefore, we deny the petition for writ of habeas corpus and the motion for stay of execution.
No motion for rehearing will be entertained by the Court.
McDONALD, C.J., and OVERTON, EHRLICH, SHAW and GRIMES, JJ., concur.
BARKETT, J., dissents with an opinion with which KOGAN, J., concurs.
BARKETT, Justice, dissenting.
The majority decides that under Hitchcock the instructions given to the jury were erroneous, but nevertheless finds the error harmless. It does so apparently for three reasons, none of which are legally supportable.
First, the majority reasons that the defense was not limited in the presentation of its nonstatutory mitigating evidence. Neither was the defense in Hitchcock, which was reversed on appeal.
The second reason appears to be that the prosecutor, through a comment at closing argument, cured the judge's deficient instruction. There is no law that supports such a proposition. Throughout every trial, including this one, the jury is instructed that it cannot rely on what the lawyers say either as evidence or as a definitive statement of the law. The jury repeatedly is told that the law it must apply comes from the judge. Thus, in light of this instruction and the court's actual instructions listing only the statutory mitigating factors, I cannot agree that the prosecutor's comment somehow rendered harmless the error in this case. This is particularly true here, when the totality of the prosecutor's comments sent a very different message to the jury than that implied by the majority, and when the jury in the middle of its deliberations requested a copy of the constitutionally deficient instructions.
Even if the prosecutor could correct an erroneous jury instruction, the comment relied on by the majority, viewed in the context of the prosecutor's entire argument, falls far short of filling the gap created by the constitutionally deficient instruction:

Certainly, to sit here and look at David Delap today as the man who has lost a considerable amount of weight, a man who is, as stated by the psychiatrists, remorseful for the acts he had done, but an act he did over three years ago, to see him here in this courtroom would cause us all to have sympathy for him.

At the same time, we would be in a situation where we tried this case immediately after this incident, and our feelings and emotions might be the other way where remorse had not set in, or he might look quite a bit different than he does today. We don't want that influence at all. Base it on the evidence that we have heard and on the guidelines that we have.

It is not an issue now of whether or not we believe morally in the death penalty. That has been decided for us. That is the penalty of the State under certain circumstances.

Your advisory opinion now is to decide, as I say, not in a callous and indifferent way, but decide if the guidelines that have been given to us by our elected officials, by our State legislature, and the belief we have in the constitutionality of this provision which has been upheld by the Supreme Court of the United States and the Supreme Court of the State of Florida, as to whether or not this is a circumstance and a type case where we want to advise this Court to impose the death penalty.

The legislature is trying to help us take out emotional or sympathetic aspects and has set forth certain circumstances *664 under which the death penalty should be considered. These are enumerated in the statute, and the Court will instruct you on them later ... . If you feel that there are sufficient aggravating circumstances to where the death penalty should be recommended, the Court will instruct you that you should go on then and consider, and you may consider, but you are not limited to considering, certain mitigating circumstances which this Court will enumerate what the mitigating circumstances are.

(Emphasis supplied.)
Specifically, the prosecutor's remarks reasonably could have been interpreted by the jury to mean that nonstatutory mitigating factors could not be considered, since they were not "circumstances ... enumerated in the statute" or "guidelines ... given to us by our elected officials." In general terms, the prosecutor's argument reinforced what the jury already had been told by the judge and defense counsel  listen to and follow the judge's instructions.
Third, the majority decision apparently is based on sheer speculation that the jury could not have reached a contrary result if the error had not occurred. This case does not present a record devoid of mitigating evidence or of ambiguity. The evidence includes, among other things, Delap's remorse,[*] his capacity for rehabilitation and to live peaceably in prison, his serious mental and emotional problems, and his unique vulnerability to alcohol caused by trauma-induced organic brain damage. A jury of reasonable men and women might not agree that this evidence is too weak to overcome the aggravating factors. I do not believe this is a case where no reasonable person could differ that death is the only appropriate penalty. See Tedder v. State, 322 So.2d 908 (Fla. 1975). To say that the error was harmless under the circumstances of this case, in my view, deprives petitioner of his right to a proper advisory sentence by a jury properly instructed on the law. Floyd v. State, 497 So.2d 1211 (Fla. 1986). This is not a valid basis for upholding a sentence of death.
Finally, although some degree of harmless error analysis might be viable in a Hitchcock situation, I am loath to adopt one in such a conclusory fashion. The cryptic reference in Hitchcock to harmless error can hardly be characterized as "acknowledg[ing] that its reasoning was subject to the harmless error analysis." Majority opinion at 662. Attempting to discern the United States Supreme Court's meaning, thereby establishing guidelines for a harmless error theory applicable to Lockett violations, requires the more deliberative process utilized in non-warrant cases. We have taken less than twenty-four hours to analyze this problem and to arrive at this conclusion. The issues involved here are far too complex and troubling for such a cursory treatment.
For these reasons, I must dissent.
KOGAN, J., concurs.
NOTES
[1] Delap's first conviction was overturned because certain portions of the trial were not transcribed, depriving this Court of a competent record for review. Delap v. State, 350 So.2d 462 (Fla. 1977).
[2] The judge had told defense counsel during the charge conference, "Now is your time to object. Otherwise, you will be foreclosed forever." This comment came after the prosecutor had advised the judge that the jury was unlimited in what it could consider.
[3] On appeal we reasoned that this ex parte trip violated Delap's rights as set out in Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), but that it in no way prejudiced Delap. 440 So.2d at 1257.
[4] The instruction given was essentially taken from the standard jury instructions and read as follows:

The aggravating circumstances which you may consider are limited to such of the following as may be established by the evidence: A, that the crime for which the defendant is to be sentenced was committed while the defendant was under sentence of imprisonment;
B, that at the time of the crime for which he is to be sentenced, the defendant had been previously convicted of a felony involving the use or threat of violence to some person;
D, that the crime for which the defendant is to be sentenced was committed while the defendant was engaged in the commission of or the attempt to commit any involuntary sexual battery, robbery, or kidnapping;
F, that the crime for which the defendant is to be sentenced was committed for pecuniary gain;
H, that the crime for which the defendant is to be sentenced was especially heinous, atrocious, or cruel.
Heinous means extremely wicked or shockingly evil. Atrocious means outrageously wicked and vile. Cruel means designed to inflict a high degree of pain, utter indifference to, or enjoyment of the suffering of others; pitiless.
If you do not find that there existed sufficient aggravating circumstances which have been described to you, it will be your duty to recommend a sentence to life imprisonment.
Should you find sufficient of these aggravating circumstances to exist, it will then be your duty to determine whether or not sufficient mitigating circumstances exist to outweigh the aggravating circumstances found to exist.
The mitigating circumstances which you may consider, if established by the evidence, are these: A, that the defendant has no significant history of prior criminal activity;
B, that the crime for which the defendant is to be sentenced was committed while the defendant was under the influence of extreme mental or emotional disturbance;
C, that the defendant was a participant in the defendant's conduct or consented to the act; let me reread that one.
C, that the victim was a participant in the defendant's conduct or consented to the act;
D, that the defendant was an accomplice in the defense for which he is to be sentenced, but the offense was committed by another person, and the defendant's participation was relatively minor;
E, that the defendant acted under extreme duress or under the substantial domination of another person;
F, the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired;
G, age of the defendant at the time of the crime.
[5] Morgan v. State, 511 So.2d 975 (Fla. 1987) (no indication that judge knew that nonstatutory mitigating evidence was pertinent); Thompson v. Dugger, 515 So.2d 173 (Fla. 1987) (prosecutor told jury to consider only statutory mitigating evidence and defense counsel was precluded from making contrary argument); Downs v. Dugger, 514 So.2d 1069 (Fla. 1987) (prosecutor told jury that only statutory mitigating circumstances should be considered); Riley v. Wainwright, 12 F.L.W. 457 (Fla. 1987) (sentencing order reflected that judge believed that Florida law permitted consideration of only statutory mitigating circumstances).
[*] The state's closing argument, quoted above, reflects the potential impact of the evidence of remorse on the jury's decision.