541 So.2d 598 (1989)
Gary Eldon ALVORD, Petitioner,
v.
Richard L. DUGGER, Etc., et al., Respondents.
No. 71192.
Supreme Court of Florida.
February 9, 1989.
Rehearing Denied May 11, 1989.
Wm. J. Sheppard, Elizabeth L. White, James C. Lohman and Cyra O'Daniel of Sheppard and White, P.A., Jacksonville, for petitioner.
Robert A. Butterworth, Atty. Gen. and Peggy A. Quince, Asst. Atty. Gen., Tampa, for respondents.
PER CURIAM.
Gary Eldon Alvord petitions this Court for a writ of habeas corpus and seeks a vacation of his death sentence and a new trial or, in the alternative, a new sentencing proceeding. We have jurisdiction. Art. V, § 3(b)(1), (9), Fla. Const. We deny relief.
The evidence at trial demonstrated that Alvord entered and burglarized the house of Ann Herrmann. During the burglary, he committed three murders by using a piece of cord and strangling Ann, her mother, Georgia Tully, and her daughter, Lynn Herrmann. Further, a vaginal test on Lynn revealed semen. On April 9, 1974, the jury convicted Alvord of three counts of first-degree murder. The jury recommended the death penalty, and the trial judge imposed that sentence. This Court affirmed both the conviction and the death sentence in Alvord v. State, 322 So.2d 533 (Fla. 1975) [Alvord I], cert. denied, 428 U.S. 923, 96 S.Ct. 3234, 49 L.Ed.2d 1226 (1976).
On November 29, 1976, Alvord filed a motion, pursuant to Florida Rule of Criminal Procedure 3.800, seeking a reduction in his sentence. The trial court denied the motion, and, on review, this Court denied his petition for a writ of mandamus in an unreported order on March 10, 1977 [Alvord II].
On October 6, 1978, Alvord filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. The trial court denied the motion and this Court affirmed that decision. Alvord v. State, 396 So.2d 184 (Fla. 1981) [Alvord III]. Alvord then sought relief in federal court by filing a petition for a writ of habeas corpus. *599 Alvord v. Wainwright, 564 F. Supp. 459 (M.D.Fla. 1983). After the district court granted part of the petition with respect to the penalty phase, id. at 490-91, the Eleventh Circuit Court of Appeals reversed and held that both the conviction and the sentence should be affirmed. Alvord v. Wainwright, 725 F.2d 1282 (11th Cir.), cert. denied, 469 U.S. 956, 105 S.Ct. 355, 83 L.Ed.2d 291 (1984). The failure to allow nonstatutory mitigating circumstances was addressed and rejected in that federal court proceeding. Id. at 1299.
On November 20, 1984, Alvord petitioned this Court for a writ of extraordinary relief and requested a judicial determination of his competency to be executed separate from the existing procedure under section 922.07, Florida Statutes (1983). This Court denied that petition in Alvord v. State, 459 So.2d 316 (Fla. 1984) [Alvord IV].
Alvord initially presented the instant habeas corpus petition before this Court seeking (1) a stay of the mental examination directed by the governor to determine his competency to be executed and (2) a new sentencing proceeding because neither the trial judge nor the jury considered nonstatutory mitigating circumstances during the sentencing phase, in violation of the rule set forth by the United States Supreme Court in Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). We denied the requested stay of the mental examination in an unreported order. Subsequently, Alvord filed an amended habeas corpus petition, adding the ground that we erred in affirming the trial court's admission of his statements when no proper warning of his right to counsel as an indigent was given. Here, he argues that since we subsequently recognized this specific error in Caso v. State, 524 So.2d 422 (Fla.), cert. denied, ___ U.S. ___, 109 S.Ct. 178, 102 L.Ed.2d 147 (1988), and expressly receded from our earlier holding in Alvord I, we should now rectify this error and grant a new trial. We granted oral argument on the Hitchcock and confession claims.

Hitchcock Claim
In Hitchcock, the United States Supreme Court held that, absent harmless error, resentencing was required when the jury was instructed to consider only evidence of statutory mitigating circumstances and the judge failed to consider nonstatutory evidence. Hitchcock v. Dugger, 107 S.Ct. at 1824. At the outset, we note that the state concedes a Hitchcock violation because all participants  the prosecutor, the defense counsel, and the trial judge  explained to the jury that it should limit consideration of mitigating circumstances to those enumerated in the statutes.
We recognize the Hitchcock error and must now determine whether the error was harmless. Hitchcock; Booker v. Dugger, 520 So.2d 246 (Fla.), cert. denied, ___ U.S. ___, 108 S.Ct. 2834, 100 L.Ed.2d 935 (1988); Delap v. Dugger, 513 So.2d 659 (Fla. 1987). We have previously applied the harmless error analysis to Hitchcock violations, found harmless error, and denied new sentencing proceedings. See, e.g., Clark v. State, 533 So.2d 1144 (Fla. 1988); Hall v. Dugger, 531 So.2d 76 (Fla. 1988); Jackson v. Dugger, 529 So.2d 1081 (Fla. 1988); Smith v. Dugger, 529 So.2d 679 (Fla. 1988); Ford v. State, 522 So.2d 345 (Fla. 1988), petition for cert. filed (July 19, 1988); Tafero v. Dugger, 520 So.2d 287 (Fla. 1988); Booker; Demps v. Dugger, 514 So.2d 1092 (Fla. 1987); Delap. On the other hand, we have found that certain Hitchcock violations did not meet the harmless error test and directed a new sentencing proceeding. See, e.g., Combs v. State, 525 So.2d 853 (Fla. 1988); Zeigler v. Dugger, 524 So.2d 419 (Fla. 1988); Mikenas v. Dugger, 519 So.2d 601 (Fla. 1988); Riley v. Wainwright, 517 So.2d 656 (Fla. 1987); Morgan v. State, 515 So.2d 975 (Fla. 1987), cert. denied, ___ U.S. ___, 108 S.Ct. 2024, 100 L.Ed.2d 610 (1988); Downs v. Dugger, 514 So.2d 1069 (Fla. 1987).
In the instant case, the trial judge, in imposing the death sentence, found the following three statutory aggravating circumstances: (1) the murders were committed during the commission of a burglary; (2) the murders were especially heinous, atrocious, *600 or cruel; and (3) Alvord's conduct created a serious risk of death to many persons. The trial judge also found two statutory mitigating circumstances. He concluded that, during the commission of the crime, Alvord was under the influence of extreme mental or emotional disturbance and his capacity to conform his conduct to the requirements of law was impaired.
Alvord now asserts that he was denied the opportunity to present nonstatutory mitigating evidence concerning among other things: (1) his capacity for rehabilitation; (2) the history of mental illness within his family; and (3) his traumatic life experiences while involuntarily committed to mental institutions. The latter two concern Alvord's mental condition which, to a large extent, was presented to both the jury and the judge. We find the mitigating evidence clearly insufficient to change the sentencing decision, given the circumstances in this case. Based on the record, we conclude that the Hitchcock error was harmless.

Confession Error
The record establishes that the trial court admitted Alvord's statements despite the investigating detective's improper Miranda warnings. Following the arrest, the detective read Alvord his rights but failed to explain that he had a right to appointed counsel if indigent. In Alvord I, we held that this failure to give the correct Miranda warnings did not preclude the evidence from being admitted. Alvord v. State, 322 So.2d 533 (Fla. 1975), cert. denied, 428 U.S. 923, 96 S.Ct. 3234, 49 L.Ed.2d 1226 (1976). However, in Caso v. State, we receded from that holding in Alvord and stated: "We therefore recede from that portion of Alvord which holds that the trial court did not err in admitting the custodial statements of the defendant." 524 So.2d at 425.
Recognizing that the admission of these statements was error, the question we must now address is whether this error was also harmless. During trial, the state presented testimony of numerous witnesses linking Alvord to the three murders. The principal part of the state's case was not Alvord's custodial statements but the testimony of his girlfriend, Zelma Hurley. She recounted a conversation she had with Alvord the morning following the murders. She testified that Alvord told her that he went over to Ann's house the previous night to "rub out" the victims; he entered the house after kicking the door in; he placed Ann, Lynn, and Georgia in separate rooms and strangled them; he did not want to strangle the older woman but did so to avoid witnesses; and he left the home with money. The importance of her testimony was reflected in Alvord's brief on direct appeal where he stated: "The evidence on which the state primarily built its case was the testimony of Zelma Hurley. All of the remaining testimony put on by the state was subordinate in importance to Zelma Hurley's testimony." Appellant's Opening Brief at 9, Alvord v. State, 322 So.2d 533 (Fla. 1975). In that brief, Alvord also stated:
The evidence tending to connect the Defendant with the murders consisted of the following:
First. While the State maintained that the murders were committed during the course of a burglary of Ann Herrmann's home, the State also offered evidence tending to show that the Defendant had harbored a dislike for Ann Herrmann before the date of the murders. Zelma Hurley testified that the Defendant had stated to her quite a few times that he disliked Ann Herrmann, and Jeanine Brautigan testified that about a month before the murders were committed the Defendant told her he could or would choke Ann Herrmann.
Second. The State introduced evidence tending to show that the Defendat had some of Ann Herrmann's jewelry in his possession after the date of the murders. Robert Bernstein who had dated Ann Herrmann for about 8 months, testified that he had given Ann Herrmann a blue, electric cigarette lighter with gold trim which was approximately 1 1/2" to 2" high. George Valahakis, Ann Herrmann's ex-husband then testified that he had given Ann Herrmann a wedding ring and an engagement ring. The wedding ring *601 contained a pear shaped diamond, and the engagement ring consisted of a diamond in the center surrounded by smaller diamonds. Mr. Valahakis also testified that he had given Ann Herrmann a Bulova, lady's watch, white-gold in color, with diamonds on each side of the watch where the band joined the watch. The band was also white-gold in color and it was an expandable type band.
The watch, the rings, and the lighter were never recovered and were not introduced in evidence at the trial. The State did, however, present testimony that the Defendant had similar appearing jewelry in his possession shortly after the murders were committed. Zelma Hurley testified that the Defendant had a gold and purple cigarette lighter, a pear shaped diamond ring, a ring with diamonds set in it in a flowered design, and a woman's watch with a small face and a stretch band in his possession on their trip to Pennsylvania shortly after the murders had been committed. Terri Williams who had seen the Defendant in Detroit, Michigan on June 25, 1973, testified that the Defendant had in his possession at that time a small woman's diamond watch with a stretch band.
Third. The State introduced evidence tending to show that some physical evidence matching that found at the scene of the murders was later found in the apartment shared by the defendant and Zelma Hurley.
The police found a short piece of rope in the apartment which was the same type of rope used to strangle the women, and a shirt which Zelma Hurley stated belonged to the Defendant was found in the apartment. The shirt had a small quantity of blood on it, but laboratory analysis could not identify it as to type or even identify it as human blood.
... .
Id. at 7-9. We find that these circumstances distinguish the instant case from Caso because in Caso the inadmissible testimony was the only real evidence linking the defendant to the murder. In this instance, Alvord's statements were clearly not the focus of this trial but were cumulative to the primary evidence presented by his girlfriend. In our view, the admission of the statements constituted harmless error.
After examining the record carefully, we find that there is no reasonable possibility that the Hitchcock error or the erroneously-admitted testimony contributed to the jury's verdict. See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). Consequently, the errors, both individually and collectively, were harmless. For the foregoing reasons, we deny relief and the stay entered in this case is vacated.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD and SHAW, JJ., concur.
GRIMES, J., concurs with an opinion, in which EHRLICH, C.J., and McDONALD, J., concur.
KOGAN, J., dissents with an opinion, in which BARKETT, J., concurs.
GRIMES, Justice, concurring.
While I agree that the admission of Alvord's statements can be considered as harmless error, I also believe that this Court's ruling in Caso v. State, 524 So.2d 422 (Fla.), cert. denied, ___ U.S. ___, 109 S.Ct. 178, 102 L.Ed.2d 147 (1988), should not be given retroactive effect even in this case. Caso involved the admissibility of a confession given after a defective Miranda[*] warning. Yet, the United States Supreme Court refused to give the Miranda decision itself retroactive application on the premise that a violation of the Miranda rule was less likely to affect the reliability of a confession than one induced by coercion. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, reh'g denied, 385 U.S. 890, 87 S.Ct. 12, 17 L.Ed.2d 121 (1966). Based on this rationale, both Florida, Nowlin v. State, 346 So.2d 1020 (Fla. 1977), and the United States Supreme Court, Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d *602 1 (1971), permit confessions obtained without proper Miranda warnings to be admitted for purposes of impeachment as long as the confessions are voluntary. Therefore, it is clear that the admission of Alvord's statements could not be deemed fundamental error.
In Alvord I, this Court interpreted Michigan v. Tucker, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974), as authority to hold that Alvord's statements could be admitted even though his Miranda warnings failed to include the advice that an attorney would be appointed to represent him if he were indigent. As a result of the United States Supreme Court's more recent interpretation of Michigan v. Tucker in Oregon v. Elstad, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), we found it necessary to recede from that position. However, the point was squarely decided against Alvord in Alvord I and only changed after a later Supreme Court decision demonstrated that we had previously misinterpreted Michigan v. Tucker. As related to any other defendant, this would constitute an evolutionary change in the law within the contemplation of Witt v. State, 387 So.2d 922 (Fla.), cert. denied, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980), and I do not think that the principle is any different simply because it is Alvord who now complains.
EHRLICH, C.J., and McDONALD, J., concur.
KOGAN, Justice, dissenting.
I cannot agree that the admission of petitioner's statements in violation of Caso v. State, 524 So.2d 422 (Fla.), cert. denied, ___ U.S. ___, 109 S.Ct. 178, 102 L.Ed.2d 147 (1988), is harmless error. The state's case against petitioner rested primarily, and almost exclusively, upon the testimony of Zelma Hurley. Petitioner's statements to the police in Michigan corroborated and gave credibility to the testimony of Ms. Hurley. The state in its closing argument to the jury put great emphasis on this statement and its importance in explaining its theory of the case. This error certainly cannot be classified as harmless.
I also cannot agree that the jury's inability to consider certain nonstatutory mitigating circumstances, such as petitioner having been a patient in mental institutions for twelve of the fourteen years preceding the commission of this crime while undergoing treatment as a paranoid schizophrenic, can be said to be harmless error beyond and to the exclusion of every reasonable doubt. The jury may have returned a recommendation of life imprisonment had it been permitted to consider this evidence and the trial judge in sentencing the petitioner might have been required to follow this recommendation under Tedder v. State, 322 So.2d 908 (Fla. 1975), because the recommendation would have been reasonable.
I would grant the petition and vacate the petitioner's conviction and sentence and remand for the purpose of conducting a new trial as to both guilt and penalty.
BARKETT, J., concurs.
NOTES
[*] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).