520 So.2d 246 (1988)
Stephen Todd BOOKER, Petitioner,
v.
Richard L. DUGGER, Etc., Respondent.
No. 70928.
Supreme Court of Florida.
January 14, 1988.
Rehearing Denied March 16, 1988.
*247 James E. Coleman, Jr. and Michael A. Mello of Wilmer, Cutler & Pickering, Washington, D.C., for petitioner.
Robert A. Butterworth, Atty. Gen. and Gary L. Printy, Asst. Atty. Gen., Tallahassee, for respondent.
PER CURIAM.
Stephen Todd Booker files this petition for writ of habeas corpus seeking to set aside the death sentence which has been imposed upon him. We have jurisdiction. Art. V, § 3(b)(9), Fla. Const.
Booker was convicted of burglary, sexual assault, and first-degree murder. Following a verdict of guilt, the jury recommended the death penalty by a nine-to-three vote. The trial judge's sentence of death was affirmed in Booker v. State, 397 So.2d 910 (Fla.), cert. denied, 454 U.S. 957, 102 S.Ct. 493, 70 L.Ed.2d 261 (1981). Our opinion in that case described the crime as follows:
The victim, an elderly woman, was found dead in her apartment in Gainesville, Florida. The cause of death was loss of blood due to several knife wounds in the chest area. Two knives, apparently used in the homicide, were embedded in the body of the victim. A pathologist located semen and blood in the vaginal area of the victim and concluded that sexual intercourse had occurred prior to death. The apartment was found to be in a state of disarray; drawers were pulled out and their contents strewn about the apartment. Fingerprints of the defendant were positively identified as being consistent with latent fingerprints lifted from the scene of the homicide. The defendant had a pair of boots which had a print pattern similar to those seen by an officer at the scene of the homicide.
Id. at 912.
Booker claims that he is entitled to relief under Hitchcock v. Dugger, ___ U.S. ___, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), in which the United States Supreme Court found reversible error where the jury was instructed to consider only statutorily enumerated mitigating circumstances and where the trial judge declined to consider nonstatutory mitigating circumstances. Booker is not barred from raising this claim since Hitchcock represented a sufficient change in the law to defeat the suggestion of procedural default. Thompson v. Dugger, 515 So.2d 173 (Fla. 1987).
At the trial, Booker was not limited in his introduction of mitigating evidence. However, the prosecutor told the jury that the only mitigating circumstances which they should consider were those listed in the statute, and the court gave the jury substantially the same instruction on aggravating and mitigating circumstances which was deemed erroneous in Hitchcock. The record of the trial does not indicate whether the trial judge was aware of the relevance of any nonstatutory mitigating evidence. However, by the time of sentencing it appears that the judge was aware of the *248 relevance of nonstatutory mitigating evidence because defense counsel, in a posttrial memorandum, referred to the recent decision of Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and the judge acknowledged in the subsequent sentencing order that he had reviewed the sentencing memoranda. Nevertheless, in view of the erroneous jury instruction which was reinforced by the prosecutor's comment, we are compelled to conclude that a sentencing error occurred under the rationale of Hitchcock. Therefore, the only remaining question is whether such error can be considered harmless. Hitchcock; Delap v. Dugger, 513 So.2d 659 (Fla. 1987).
The trial judge found the following aggravating circumstances:
(b) Whether the defendant has previously been convicted of another capital felony or of a felony involving the use or threat of violence to the person.
Finding:
The defendant had been previously convicted of a felony involving the use of threat of violence to another.
... .
(d) Whether the murder was committed while the defendant was engaged in the commission of, or an attempt to commit, or flight after committing or attempting to commit, any burglary or rape.
Finding:
The stabbing which caused the death of LORINE DEMOSS HARMAN took place immediately after the vaginal penetration of her by the sex organ of STEPHEN TODD BOOKER. The other wounds took place while or immediately before and after completion of the crime of sexual battery. The capital murder also took place after Booker committed the felony of burglary of a dwelling as charged in Count III of the Indictment, and before he completed his flight from said crime.
(e) Whether the murder of which the defendant was convicted was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody.
Finding:
The murder was not committed for the latter of these purposes, but, among other reasons, was committed for the purpose of avoiding or preventing a lawful arrest. [See aggravation paragraph below (h).] (Brackets in original).
(f) Whether the murder of which the defendant has been convicted was committed for pecuniary gain.
Finding:
There isn't evidence that the capital murder was committed for pecuniary gain though Booker did obtain personal property of his victim, and he thoroughly searched her apartment for whatever he wanted.
... .
(h) Whether the murder of which the defendant was convicted was especially heinous, atrocious or cruel.
Finding:
LORINE DEMOSS HARMAN was 94 years of age at the time of her death. She was active, alert, spry, enjoyed playing bridge on a regular basis with her friends, participated in church and other wholesome activities, preferred to take care of herself in her own apartment, to come and go in her pursuit of happiness and looked forward, as most others do, to the enjoyment of life.
Booker did not know Mrs. Harman. When she returned from visiting with friends, the defendant severely beat, wounded, raped and finally killed her, but his aggressive, antisocial hatred had not yet been satiated, hence, she was stabbed in the throat before death and after suffering the horrible indignities inflicted upon a lady who had not previously confronted such a gross animal-like fiend.
It is manifest from her picture in death that she suffered greatly in body and mind, knowing that her death was near and by reason of degrading inhuman cruelty.
There were seven stab wounds in her chest with one knife left embedded to its *249 handle. There were no fewer than two stabs in her throat with a butcher knife left sticking through that part of her anatomy. There were other wounds and contusions with internal bleeding consistent with the outrageous beating of a 90-pound female by a strong overpowering male[.] Beyond gainsay, this cold, calculated capital murder was especially heinous, atrocious and cruel.
Booker, 397 So.2d at 916-17.
All of the mitigating evidence was directed toward Booker's mental and emotional stability. A detective testified that following his arrest Booker acted in a bizarre manner by chanting and referring to himself as "Aniel" and then made the statement that "Steve had done it." Booker presented a psychiatrist who said that he had reviewed records of Booker's prior hospitalizations for mental problems which stated that he had been diagnosed as paranoid schizophrenic and as having organic brain syndrome secondary to drug use. Even though this psychiatrist had examined Booker twice, he was unable to conclude whether or not he was insane. The state's psychiatrist who had examined Booker on three occasions testified that he was legally sane and that he did not have organic brain syndrome. Both psychiatrists indicated that Booker's reference to himself as "Aniel" was likely the self-serving product of his own control. Booker himself took the stand and stated that he did not remember the acts which were alleged that he had committed, though he acknowledged that  when he got up that morning he felt like he may have wanted to kill someone. At the conclusion of his testimony and against the advice of his attorney, he made the following statement:
THE DEFENDANT, MR. BOOKER: You people in the jury box have convicted me of first degree murder, sexual battery, and burglary. And you are going in the room and deliberate over what punishment should be given for a crime of this nature. A defendant found guilty of such a crime should receive the death penalty. That's it.
In the sentencing order, the judge found no mitigating circumstances. The judge rejected the "Aniel" syndrome as irrelevant and most likely self-serving and concluded that Booker "was the manipulative master of his acts at the time of the crimes."
In essence, Booker's position is that even though the evidence concerning his mental and emotional condition did not rise to the level of statutory mitigating circumstances, with the proper instructions the jury would have found it sufficient to recommend against death, and the judge would have accepted the jury's recommendation. We cannot agree. Given the facts relevant to this sentencing, it would be unreasonable to conclude that even though the jurors did not find the mitigating evidence strong enough to offset the aggravating circumstances and thereby recommend life imprisonment, they would have done so had they realized that the same evidence could be considered as nonstatutory as well as statutory mitigation. We are convinced beyond a reasonable doubt that even with the proper jury instruction and without the prosecutor's compounding comment, the jury would not have made a recommendation for life imprisonment. There was simply no nonstatutory mitigating evidence sufficient to offset the aggravating circumstances upon which the jury could have reasonably predicated such a recommendation. We are also convinced beyond a reasonable doubt that the judge would have sentenced Booker to death regardless of the jury's recommendation and that an override would have been consistent with the rationale of Tedder v. State, 322 So.2d 908 (Fla. 1975). Accordingly, we deny the petition for writ of habeas corpus.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH, SHAW and GRIMES, JJ., concur.
KOGAN, J., dissenting with an opinion, in which BARKETT, J., concurs.
KOGAN, Justice, dissenting.
*250 In this case, as in Demps v. Dugger, 514 So.2d 1092 (Fla. 1987), and Delap v. Dugger, 513 So.2d 659 (Fla. 1987), I cannot say beyond a reasonable doubt that the sentencing error was harmless. The majority, in presuming that a jury recommendation of life would be properly overridden, places itself in the position of the trial judge and jury without having the benefit of anything more than the cold, impersonal record.
Again, as in Demps, there is no doubt that error occurred at the sentencing hearing in the instructions and argument to the jury. Yet the majority concludes that any error was harmless beyond a reasonable doubt.
In this case there is evidence of insanity or at least mental instability upon which the jury could reasonably have recommended life. Such a recommendation would, under Tedder v. State, 322 So.2d 908 (Fla. 1975), be entitled to great weight. For these reasons, as well as for those reasons expressed in my dissenting opinion in Demps, I must again dissent. The danger in placing this Court in the position of jury and sentencer is self evident. Harmless error analysis invites that danger, particularly in a case such as this where there is significant nonstatutory mitigating evidence which could conceivably change the jury recommendation. Therefore, I cannot say beyond a reasonable doubt that the error which occured in the sentencing phase was harmless. I would vacate the sentence of death and remand the case for a new sentencing proceeding in accordance with Hitchcock v. Dugger, ___ U.S. ___, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), and Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).
BARKETT, J., concurs.