**Stephen Todd BOOKER,**
**Petitioner–Appellee,**

v.

**Richard L. DUGGER, Secretary, Florida**
**Department of Corrections,**
**Respondent–Appellant.**

No. 88–3751.

United States Court of Appeals,
Eleventh Circuit.

Jan. 14, 1991.

Gary L. Printy, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for respondent-appellant.

Michael A. Mello, Vermont Law School, South Royalton, Vt., Jeffrey D. Robinson, Nussbaum, Owen & Webster, Washington, D.C., for petitioner-appellee.

Before TJOFLAT, Chief Judge, and JOHNSON and CLARK, Circuit Judges.

CLARK, Circuit Judge:

The state of Florida appeals the district court's grant of habeas corpus. Because the district court correctly determined that petitioner Stephen Todd Booker's death sentence was imposed in violation of *Hitchcock v. Dugger*, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987) (applying *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57

L.Ed.2d 973 (1978), to Florida capital punishment process), and because this error was not harmless, we affirm.

The facts of the underlying crime are set out in the opinion of the Florida Supreme Court on direct appeal. *Booker v. State,* 397 So.2d 910 (Fla.), *cert. denied,* 454 U.S. 957, 102 S.Ct. 493, 70 L.Ed.2d 261 (1981).

Booker's claim for relief is that the court that sentenced him to death was precluded from considering nonstatutory mitigating evidence he presented. *Hitchcock,* 481 U.S. at 393, 107 S.Ct. at 1821. Although Booker has been through one round of habeas corpus consideration in the federal courts, *see Booker v. Wainwright,* 703 F.2d 1251 (11th Cir.), *cert. denied,* 464 U.S. 922, 104 S.Ct. 290, 78 L.Ed.2d 266 (1983), his claim is not procedurally barred because *Hitchcock* represents a significant change in the law since his previous petition. *Messer v. Florida,* 834 F.2d 890, 892–93 (11th Cir.1987). He has exhausted his state court remedies. *Booker v. Dugger,* 520 So.2d 246 (Fla.), *cert. denied,* 486 U.S. 1061, 108 S.Ct. 2834, 100 L.Ed.2d 935 (1988).

Both the Florida Supreme Court and the district court found that there had been *Hitchcock* error at Booker's trial. The jury instruction given by the trial judge was the equivalent of that given in *Hitchcock,* and the prosecutor told the jury that they were only to consider the listed statutory mitigating circumstances. *Booker v. Dugger,* 520 So.2d at 247; District Court Order, Sept. 19, 1988, at 2. In a presentence memorandum, Booker's counsel brought the then-recent decision in *Lockett,* 438 U.S. at 586, 98 S.Ct. at 2954, to the trial court's attention. *See* "Memorandum in Support of Motion to Exclude the Death Penalty," Record on Appeal to Florida Supreme Court, pp. 135–37. However, *Lockett* did not figure in counsels' arguments to the court at the presentence hearing nor in the court's sentencing decision. Although the trial court, in passing sentence, noted that it "carefully considered" all the evidence in aggravation and mitigation introduced at trial, it then only discussed mitigating evidence as it applied to the statutory factors. *See* "Judgment and Sentence," Oct. 20, 1978, Record on Appeal, Tab C, p. 29.

The Florida Supreme Court held that the *Hitchcock* error was harmless, noting that "[t]here was simply no nonstatutory mitigating evidence sufficient to offset the aggravating circumstances upon which the jury could have reasonably predicated [a recommendation of life]." *Booker v. Dugger,* 520 So.2d at 249. That court also postulated that the sentencing judge would have overridden any jury recommendation of a sentence less than death. *Id.* The district court found that neither the sentencing jury nor the judge considered Booker's nonstatutory mitigating evidence outside of the statutory scheme. Because it was loath to speculate as to the possible effects of this excluded evidence on the sentencing body, the district court granted the writ. Order, p. 3.

Our analysis is focused solely on Florida's contention that the *Hitchcock* error was harmless beyond a reasonable doubt. *See generally Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). This court's precedents have largely limited the applicability of harmless error analysis in *Hitchcock* claims to instances where the petitioner or counsel made a strategic decision not to present mitigating evidence, or where no nonstatutory mitigating evidence could have been produced. *See, e.g., Delap v. Dugger,* 890 F.2d 285, 304–06 (11th Cir.1989) (error not harmless where evidence of remorse, capacity for rehabilitation, good behavior, and organic brain damage not considered), *cert. denied,* —— U.S. ——, 110 S.Ct. 2628, 110 L.Ed.2d 648 (1990); *Demps v. Dugger,* 874 F.2d 1385, 1389–91 (11th Cir.1989) (error harmless where record revealed the nonavailability of supportable mitigating evidence), *cert. denied,* —— U.S. ——, 110 S.Ct. 1834, 108 L.Ed.2d 963 (1990); *Tafero v. Dugger,* 873 F.2d 249, 252 & nn. 4–5 (11th Cir.1989) (per curiam) (error harmless where no significant nonstatutory mitigating evidence existed and where counsel purposely presented no nonstatutory mitigating evidence), *cert. denied,* —— U.S. ——, 110 S.Ct. 1834, 108 L.Ed.2d 962

(1990); *Jones v. Dugger*, 867 F.2d 1277, 1279–80 (11th Cir.1989) (error not harmless where evidence of prison rehabilitation not considered); *Clark v. Dugger*, 834 F.2d 1561, 1569–70 (11th Cir.1987) (error harmless where trial counsel made strategic decision not to introduce any mitigating evidence), *cert. denied*, 485 U.S. 982, 108 S.Ct. 1282, 99 L.Ed.2d 493 (1988); *Magill v. Dugger*, 824 F.2d 879, 893–95 (11th Cir.1987) (error not harmless where evidence of remorse excluded).

■ From these decisions, a *Hitchcock* error will not be found harmless if the evidence excluded from the jury's sentencing deliberations by a limiting instruction could have had any effect on the jury's recommendation. *See Skipper v. South Carolina*, 476 U.S. 1, 8, 106 S.Ct. 1669, 1673, 90 L.Ed.2d 1 (1986) (*Lockett* violation not harmless because Court could not "confidently conclude" that the excluded evidence "would have had no effect upon the jury's deliberations"). In situations where counsel has made a strategic choice not to introduce any mitigating evidence, it is clear that *Hitchcock* violations are harmless: "Having failed to produce evidence of any nonstatutory mitigating factors, [petitioner] can hardly complain that the trial court restricted the jury's ability to consider them." *Clark*, 834 F.2d at 1570. Likewise, where no true mitigating evidence exists, *Hitchcock* is not implicated. *See, e.g., Demps*, 874 F.2d at 1396 (Clark, J., specially concurring) ("Where there is no nonstatutory mitigating evidence there can be no *Hitchcock* error and harmlessness need not be considered.").

■ In petitioner's case it is clear beyond cavil that significant nonstatutory mitigating factors were excluded from the jury's consideration by the erroneous jury charge. Booker was the only defense witness at the sentencing phase of the trial, and he testified that he had been hospitalized for psychiatric reasons nine times beginning at age 13, that he had severe problems with alcohol and drugs and had experienced blackouts, and that he was honorably discharged from the Army. He said he could not remember the crime, but that if he did it he felt remorseful. He also stated, against counsel's advice, that someone who had committed this type of crime should receive the death penalty. Although no psychiatric testimony was presented during sentencing, Booker did call one psychiatrist during the guilt phase of his trial; the testimony adduced showed that, although Booker was not insane, his records from Walter Reed Army Medical Center indicated that Booker suffered from an organic brain disorder as a result of drug use. The psychiatrist also testified that there were indications of paranoid schizophrenia. The police officer who took Booker's confession testified that Booker seemed to have a split personality when he confessed. Booker assumed the identity of "Aniel"; he said that "Steve" committed the murder; he clenched his teeth so hard they cracked; and he laughed and cried uncontrollably. The officer stated that he did not think Booker was faking.[1] There was also evidence that Booker was cooperative with the police, and that he may have made the anonymous phone call reporting the murder.

After the jury recommended death by a 9–to–3 vote, the trial judge was presented with other evidence prior to passing sentence. This evidence included the report of a court-appointed psychiatrist. This report concluded that Booker had above normal intelligence but was impulsive and had difficulty postponing gratification. It also noted that Booker had had little supervision as a child, that he began drinking and using drugs as a teenager, and that he had experienced hallucinations. The psychiatrist concluded that Booker was not under extreme emotional duress or the domination of another at the time of the crime. But due in part to intoxicants he had consumed, Booker was "most probably ... less able than the average individual to conform his conduct to the requirements of the law."

The *Delap* case presents very similar circumstances. Both Delap and Booker expressed remorse for their crimes and coop-

---

**1.** The trial court judge found that this evidence was self-serving.

erated with the authorities. *Delap*, 890 F.2d at 306. More significantly, there was considerable evidence that Delap, like Booker, suffered from an organic brain disorder. *Id.* In *Delap*, this court noted that "[t]here was substantial and significant psychological evidence which the jury, if it followed the court's instruction, would have considered only if it rose to the level of a statutory mitigating factor; i.e., only if the jury found that Delap committed the crime 'under the influence of *extreme* mental or emotional disturbance.' Fla.Stat. § 921.141(6)(b) (1977) (emphasis added).... Had the jury been properly instructed, it may have considered the psychological evidence in mitigation even if it did not find that the evidence met the required threshold level for a statutory mitigating factor." *Delap*, 890 F.2d at 305–06. Comparably, Booker's jury may have found that his psychiatric nonstatutory mitigating evidence did not rise to the level of the Florida statutory mitigating circumstances.[2] The *Delap* court also found significant the fact that at least one juror voted for life imprisonment, *id.* at 306, whereas three of Booker's jurors voted for life.

Thus there was available, nonstatutory mitigating evidence that was not considered by the sentencing jury or judge due to the *Hitchcock* violation.[3] Because we are not able to speculate as to the effect this substantial evidence would have had on the sentencing body, we cannot find the error harmless, regardless of the number of aggravating circumstances that may have been found. *See Knight*, 863 F.2d at 710.[4]

The state of Florida has not shown the existence of harmless error beyond a reasonable doubt. Accordingly, the order of the district court is AFFIRMED.

TJOFLAT, Chief Judge, specially concurring:

While I agree that we must affirm the district court's order in this case, I believe that, as a preliminary matter, the court should have considered whether the Florida Supreme Court resentenced Booker or merely reviewed his sentence under harmless error analysis. In *Clemons v. Mississippi*, ―― U.S. ――, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), the United States Supreme Court recognized that state appellate courts may act as resentencers and thereby cure constitutional defects that occur in the state trial courts. The Florida Supreme Court, in accordance with *Clemons*, could have acted as a resentencer in this case, weighing the nonstatutory mitigating evidence that the trial court ignored. If the court adopted this role, it erased any prejudice caused by the sentencing court's *Hitchcock* error—an error that otherwise would be fatal to the State's claim. In my view, since the outcome of this case hinges on whether the Florida Supreme Court acted as an appellate sentencer or as a pure reviewing court, the *Clemons* issue merits our discussion.

## I. The *Hitchcock* Claim.

Petitioner claims that as a result of the prosecutor's closing argument and the trial

---

**2.** Booker's prosecutor argued that none of the mitigating circumstances, including the "extreme mental or emotional disturbance" factor, applied. The trial judge found no statutory mitigating factors.

**3.** In addition to the evidence that was presented but was not considered, evidence existed that could have been submitted at the sentencing phase if counsel had not believed that the law limited him to statutory mitigating circumstances. *See Knight v. Dugger*, 863 F.2d 705, 759 (11th Cir.1988) (Clark, J., concurring). The examining psychiatrists could have been called to testify concerning Booker's mental health history. This history included (1) a brief commitment at the age of 14 because he had choked his dog and hit his mother; (2) treatment at Walter

Reed for several months; (3) a seizure while in prison and treatment with Dilantin; (4) hallucinations during childhood; and (5) two suicide attempts in jail following the murder. Other possible nonstatutory mitigating evidence included educational and institutional records showing Booker's artistic ability, drinking problems, and schizophrenia.

**4.** The state of Florida argues that this court must show deference to the Florida Supreme Court's determination that the error was harmless. Federal courts are not, however, bound by state court rulings on harmless error. *See, e.g., Grizzell v. Wainwright*, 692 F.2d 722, 725 (11th Cir.1982), *cert. denied*, 461 U.S. 948, 103 S.Ct. 2129, 77 L.Ed.2d 1307 (1983).

judge's instructions at the sentencing phase of his trial, the advisory jury failed properly to consider nonstatutory mitigating evidence in violation of *Hitchcock v. Dugger*, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987) (applying *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), to the Florida capital sentencing scheme).[1] On direct petition for a writ of habeas corpus, the Florida Supreme Court denied Booker relief; the court agreed that *Hitchcock* error had occurred but held that the error was harmless. *Booker v. Dugger*, 520 So.2d 246, 247, 249 (Fla.), *cert. denied*, 486 U.S. 1061, 108 S.Ct. 2834, 100 L.Ed.2d 935 (1988). On federal habeas review, the district court granted Booker relief—a new sentencing hearing. Applying a harmless error standard, the district court held that the State had not shown beyond a reasonable doubt that the *Hitchcock* error did not affect the outcome of Booker's sentencing proceeding. The State appeals from the district court's grant of relief, arguing that the error was in fact harmless.[2]

As noted by the majority, a *Hitchcock* error is harmless only if we conclude that the excluded evidence would have had no effect on the jury or the sentencing judge. *See Hitchcock*, 481 U.S. at 399, 107 S.Ct. at 1824. Under the strict criterion of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), which governs harmless error analysis, "[t]he error must be harmless beyond a reasonable doubt." *Demps v. Dugger*, 874 F.2d 1385, 1389–90 (11th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 1834, 108 L.Ed.2d 963 (1990). For a *Hitchcock* error to be harmless under this standard, "the court must determine beyond a reasonable doubt that the proposed mitigating evidence ... would not have influenced the jury to recommend [or the trial judge to impose] a life sentence." *Id.* at 1390; *see Jones v. Dugger*, 867 F.2d 1277, 1279 (11th Cir.1989) (state must prove beyond reasonable doubt that error "did not contribute to the jury's sentencing recommendation"); *Clark v. Dugger*, 834 F.2d 1561, 1569 (11th Cir.1987) (error "could not have affected" sentence), *cert. denied*, 485 U.S. 982, 108 S.Ct. 1282, 99 L.Ed.2d 493

**1.** The exact nature of this *Hitchcock* error remains somewhat uncertain. The Supreme Court of Florida, in characterizing the error, found that the jury had heard all of the mitigating evidence during the sentencing phase of petitioner's trial but that the prosecutor's arguments and the judge's instructions forced the jury to try to evaluate that evidence within the statutory categories of mitigating circumstances, *see* Fla.Stat. § 921.141(6) (1990), when they should have directed the jury to give the evidence independent weight. In this appeal, however, Booker argues that, because of the sentencing judge's view—as articulated in his written findings and conclusions respecting the aggravating and mitigating circumstances in the case—that only statutory mitigating circumstances counted, his defense attorney entirely failed to develop or present to the jury or, later, at sentencing, to the judge certain mitigating evidence that would not fit within the statutory categories. As the majority points out, if Booker's argument is right, then not only did the jury and the trial judge fail to give independent weight to some nonstatutory mitigating evidence that might have been before them (disguised, of course, as statutory mitigating circumstances), but they did not consider other pieces of nonstatutory mitigating evidence at all.

**2.** The State also argues that Booker's *Hitchcock* claim is barred under the doctrine of *Wainwright v. Sykes*, 433 U.S. 72, 86–87, 97 S.Ct.

2497, 2506, 53 L.Ed.2d 594 (1977), because Booker failed to comply at trial with Florida's contemporaneous objection rule. This argument is obviously meritless. The Florida Supreme Court has already addressed the merits of Booker's *Hitchcock* claim, and we have consistently held that claims addressed on the merits by a state court are not barred from federal habeas review. *See Mann v. Dugger*, 844 F.2d 1446, 1448 n. 4 (11th Cir.1988), *cert. denied*, 489 U.S. 1071, 109 S.Ct. 1353, 103 L.Ed.2d 821 (1989); *Cooper v. Wainwright*, 807 F.2d 881, 886–87 (11th Cir.1986) (per curiam), *cert. denied*, 481 U.S. 1050, 107 S.Ct. 2183, 95 L.Ed.2d 839 (1987); *Oliver v. Wainwright*, 795 F.2d 1524, 1528–29 (11th Cir.1986), *cert. denied*, 480 U.S. 921, 107 S.Ct. 1380, 94 L.Ed.2d 694 (1987); *see also Messer v. Florida*, 834 F.2d 890, 892–93 (11th Cir.1987) (because Florida treated *Hitchcock*'s holding as a significant change in the law that excused a procedural default, that claim was not defaulted in federal habeas proceedings; "When the state court has declined to rely upon a procedural default or when its procedural default rule has been only sporadically invoked, the procedural default no longer bars consideration of the issue in federal court." (citations omitted)); *Hargrave v. Dugger*, 832 F.2d 1528, 1536–39 (11th Cir.1987) (en banc) (Tjoflat, J., specially concurring), *cert. denied*, 489 U.S. 1071, 109 S.Ct. 1353, 103 L.Ed.2d 821 (1989).

(1988); *Magill v. Dugger*, 824 F.2d 879, 894 (11th Cir.1987) (errors must have "had no effect" on decision). Thus, unless we can say for sure that the error at issue would have made no difference to the outcome of the sentencing hearing, we cannot hold that the error was harmless. If, without such certainty, we were to hold an error harmless, our decision would be arbitrary and would present a serious constitutional problem.

The majority today limits its harmless error inquiry to what the *jury* [3] might have done had it been properly instructed to consider the nonstatutory evidence that Booker presented. In my view, the Supreme Court's recent decision in *Clemons v. Mississippi*, —— U.S. ——, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), and several cases cited therein, requires us at least to investigate the Florida Supreme Court's role in this case and determine whether it acted as an appellate sentencer. Because the Florida Supreme Court was presented with all of the mitigating evidence that counsel failed to present to the jury, if the court did act as an appellate sentencer, there is no reasonable probability that, absent the *Hitchcock* error, the result of the sentencing proceeding would have been different.[4]

I begin my analysis by discussing the state appellate court's independent sentenc-ing role, as recognized by Supreme Court caselaw, in capital sentencing schemes. I then show that although the Florida Supreme Court sometimes acts as a resentencer, here it merely reviewed the district court's sentence for constitutional infirmity.

## II. The State Appellate Court as Sentencer.

### A.

The notion that a state appellate court could act as an independent sentencer without violating the Constitution appears to have originated in *Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). In *Stephens*, the jury found three statutory aggravating circumstances from the evidence and recommended that Stephens be sentenced to death. The trial court, being bound by the jury's recommendation, imposed the death sentence.[5] While Stephens' appeal was pending in the Georgia Supreme Court, that court, in *Arnold v. State*, 236 Ga. 534, 224 S.E.2d 386 (1976), struck down one of the three statutory provisions on which the jury had relied in recommending that he be sentenced to death. Then, in Stephens' appeal, the Georgia Supreme Court affirmed Stephens' sentence, concluding that the two remaining aggravating circumstances supported

---

**3.** In Florida, the jury offers only an advisory opinion as to whether the death sentence should be imposed; the trial judge has the primary responsibility for determining what sentence should be imposed under Florida's capital sentencing scheme. *See* Fla.Stat. § 921.141(2)–(3).

**4.** Booker claims that the jury and sentencing judge did not hear *all* of the nonstatutory mitigating evidence. *See supra* note 1. Booker asserts that, because of the sentencing judge's view that only statutory mitigating circumstances counted, his defense attorney did not develop or present certain mitigating circumstances that did not fall within the statutory categories. According to the district court, although the sentencing judge had access to all of the mitigating evidence, he did not consider it independently but only to determine whether it fell within the statutory categories. The Florida Supreme Court, however, did consider all of the mitigating evidence, statutory as well as nonstatutory.

The significance of this issue—whether the jury and sentencing judge in fact heard all the mitigating evidence—depends on the Florida Supreme Court's function. If, under a valid state law premise, the court functioned as a resentencer, then the issue becomes irrelevant. As long as the court itself considered all of the nonstatutory mitigating circumstances, its resentencing would be free of *Hitchcock* error, and Booker would have no federal constitutional claim. On the other hand, if the court functioned in a purely reviewing capacity, then the issue becomes significant. The jury's and judge's failure to hear all of the nonstatutory mitigating evidence would add to the uncertainty of how that evidence would have affected the sentencing hearing's outcome and therefore would also add to the arbitrariness of the reviewing court's decision that the error was harmless.

**5.** In Georgia, the recommendation of the jury is binding on the trial judge. *See* Ga.Code Ann. § 17–10–31 (1990).

his sentence. *Stephens v. State*, 237 Ga. 259, 227 S.E.2d 261, 263 (1976).

Stephens then petitioned a federal district court for a writ of habeas corpus, contending that the Georgia Supreme Court could not predict what the outcome of the sentencing hearing would have been had the jury not relied on the invalid aggravating circumstance. Therefore, according to Stephens, the Georgia Supreme Court acted arbitrarily in affirming his sentence and should have remanded his case to the trial court for a new sentencing hearing. The federal district court denied Stephens' petition, but the Fifth Circuit reversed and issued the writ. The Fifth Circuit concluded that "[i]t is impossible for a *reviewing court* to determine satisfactorily that the [jury's] verdict in this case was not decisively affected by an unconstitutional statutory aggravating circumstance." *Stephens v. Zant*, 631 F.2d 397, 406 (5th Cir. 1980) (emphasis added), *modified in part*, 648 F.2d 446 (5th Cir. June 1981) (per curiam). Thus, the Fifth Circuit treated the Georgia Supreme Court as a pure reviewing court—one that can point out constitutional errors in the sentencing proceeding but that cannot cure those errors by independently sentencing the defendant. Consequently, the Fifth Circuit held Georgia's sentencing scheme, as applied in *Stephens*, unconstitutional.

The United States Supreme Court initially found that it could not discern the basis upon which the Georgia Supreme Court had affirmed Stephens' sentence and therefore could not tell whether the court had acted arbitrarily and denied Stephens the due process of law. The Court consequently certified a question of state law to the Georgia Supreme Court, asking it to explain the state law premise upon which it based its affirmance of Stephens' sentence. *Zant v. Stephens*, 456 U.S. 410, 102 S.Ct. 1856, 72 L.Ed.2d 222 (1982).

When the Georgia Supreme Court answered the certified question, the Court concluded that Georgia's capital sentencing scheme, which allowed the Georgia Supreme Court to affirm a sentence after one or more aggravating circumstances had

been invalidated, was constitutional as applied in Stephens' case. The Court carefully reviewed Georgia's capital sentencing scheme, noting first that the trier of fact (the jury) is required to find the existence of aggravating and mitigating circumstances. No defendant is eligible for the death penalty unless the jury finds at least one statutory aggravating circumstance. *See Stephens*, 462 U.S. at 871, 103 S.Ct. at 2739–40. Once such an aggravating circumstance is found, the jury has "'absolute discretion'" in deciding whether to impose the death penalty. *See id.*, 103 S.Ct. at 2740 (quoting *Zant v. Stephens*, 250 Ga. 97, 297 S.E.2d 1, 3 (1982)).

In the case before it, the Court found that the evidence admitted to establish the invalid statutory aggravating circumstance still would have been fully admissible in the sentencing phase under another Georgia statute. *Id.* at 886–87, 103 S.Ct. at 2747–48. The Court then noted that the invalid circumstance "arguably might have caused the jury to give somewhat greater weight to [the evidence]." *Id.* at 888, 103 S.Ct. at 2749. Nevertheless, the Court concluded that the Georgia Supreme Court did not err in finding the impact of the improper labeling to be inconsequential. *Id.* at 888–89, 103 S.Ct. at 2749.

This holding is puzzling at first given (1) the jury's *absolute discretion* in deciding whether to impose the death penalty and (2) the Court's finding that the invalid label might have influenced the jury's decision-making process. How can a pure reviewing court decide that a jury with absolute discretion would not have reached a different conclusion under admittedly different circumstances? I submit that it cannot. As I have stated on another occasion, a state scheme that allows a reviewing court "to affirm a sentence when it cannot tell whether the ... sentencing court would have imposed the same sentence absent the error found on review" raises serious problems of arbitrary review. *Ford v. Strickland*, 696 F.2d 804, 837 (11th Cir.) (en banc) (Tjoflat, J., concurring in part and dissenting in part), *cert. denied*, 464 U.S. 865, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983). Therefore, the Court's holding can be understood

only in light of a key statement: "Our decision in this case depends in part on the existence of . . . the mandatory appellate review of each death sentence by the Georgia Supreme Court to avoid arbitrariness and to assure proportionality." *Stephens,* 462 U.S. at 889–90, 103 S.Ct. at 2749. Thus, the Court was willing to allow the Georgia Supreme Court to do something the Fifth Circuit would not allow, i.e., to "cure" any uncertainty remaining after harmless error review by independently finding the sentence to be proportionate to sentences imposed in other cases. *See Ford,* 696 F.2d at 837 (Tjoflat, J., concurring in part and dissenting in part). In essence, the Court approved a certain degree of appellate sentencing.[6]

The idea of appellate sentencing was further developed in *Cabana v. Bullock,* 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986). In *Bullock,* the Court addressed the question whether an *Enmund* finding (that the defendant has killed, attempted to kill, or intended that a killing take place or that lethal force be employed) can be made only by a jury or whether the finding can be made at some other step in the state's criminal process. *See Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). The Court held, in *Bullock,* that *Enmund* did not add any elements to the state's substantive offense; it merely defined the class of persons that, under the eighth amendment, could be sentenced to death. *See Bullock,* 474 U.S. at 385, 106 S.Ct. at 696. The Court went on to hold that, although an *Enmund* finding requires a factual determination, "[t]he State has considerable freedom to structure its capital sentencing system as it sees fit" and that the finding may be made by any state court "that has the power to find the facts and vacate the sentence." *Id.* at 386–87, 106 S.Ct. at 697.

*Stephens* and *Bullock,* taken together, implicitly support the proposition that state appellate courts, consistent with the eighth amendment, may independently reweigh evidence and sentence capital defendants. The Supreme Court, however, recently made this implicit holding explicit in *Clemons v. Mississippi,* —— U.S. at ——, 110 S.Ct. at 1441.

## B.

Chandler Clemons, convicted of capital murder in Mississippi state court, was sentenced to death. The jury, in mandating the death penalty,[7] found two aggravating circumstances: (1) the murder was committed during the course of a robbery or for pecuniary gain and (2) the murder was "especially heinous, atrocious or cruel." *Id.* at ——, 110 S.Ct. at 1445. On direct appeal to the Mississippi Supreme Court, the court noted that the "especially heinous" circumstance had been held unconstitutionally vague in *Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). *See Clemons v. State,* 535 So.2d 1354, 1362 (Miss.1988). In *Maynard,* the United States Supreme Court refused to reinstate the death penalty because "the Oklahoma Court of Criminal Appeals would not attempt to save the death penalty when one of several aggravating circumstances found by the jury was found invalid." 486 U.S. at 365, 108 S.Ct. at 1860. The Mississippi Supreme Court, however, distinguished *Maynard* from the case before it because:

> [the Mississippi Supreme] Court has placed a limiting construction on the aggravating circumstance of "especially heinous, atrocious or cruel;" . . . Mississippi law holds one invalid aggravating circumstance will not suffice to overturn a death penalty where one or more valid aggravating circumstance(s) remains; . . . brutal and torturous facts sur-

---

**6.** The Court declined to "express any opinion concerning the possible significance of a holding that a particular aggravating circumstance is 'invalid' under a statutory scheme [like Florida's] in which the judge or jury is specifically instructed to weigh statutory aggravating and mitigating circumstances in exercising its discretion whether to impose the death penalty."

*Stephens,* 462 U.S. at 890, 103 S.Ct. at 2750. The Court answered this question in *Clemons. See infra* pp. 640–42.

**7.** In Mississippi, the jury decides whether the death sentence is to be imposed. *See* Miss.Code Ann. § 99–19–101 (Supp.1990).

round[ed] the murder ...; ... narrowing instructions [were] given to the jury by the lower court; ... [and] beyond a reasonable doubt ... the jury's verdict would have been the same with or without the "especially heinous, atrocious or cruel" aggravating circumstance.

*Clemons*, 535 So.2d at 1364.

Clemons argued before the United States Supreme Court that, in affirming the death sentence, the Mississippi Supreme Court engaged in an independent weighing of the (valid) aggravating and mitigating circumstances[8] in violation of the sixth and eighth amendments. The Court held, however, that neither the sixth amendment,[9] eighth amendment,[10] nor any other constitutional provision prohibits a state appellate court from independently weighing aggravating and mitigating circumstances.

In refuting Clemons' eighth amendment argument, the Court held that appellate weighing of aggravating and mitigating circumstances was perfectly consistent with the goals of measured consistent application of the state's death penalty and fairness to the defendant. Indeed, such appellate weighing occurs in a state appellate court's proportionality review. *See Clemons,* — U.S. at ——, 110 S.Ct. at 1448. Thus, the Court concluded "that state appellate courts can and do give each defendant an individualized and reliable sentencing determination based on the defendant's circumstances, his background, and the crime." *Id.* at ——, 110 S.Ct. at 1449.

Despite this holding, the Court remanded the case to the Mississippi Supreme Court. According to the Court, it could not tell whether the Mississippi Supreme Court had (1) conducted an individualized weighing of the aggravating and mitigating circumstances, (2) applied a state rule that re-

quired automatic affirmance of the death penalty when at least one valid aggravating circumstance remains, or (3) applied the harmless error analysis of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *See Clemons,* — U.S. at ——, 110 S.Ct. at 1449–51.

The language in the Mississippi Supreme Court opinion is ambiguous—portions of it are consistent with each of the three approaches, but it does not completely correspond with any of them. For example, in conducting its proportionality review, the court determined that "[i]n our opinion ... the punishment of death is not too great when the aggravating and mitigating circumstances are weighed against each other...." *Clemons,* 535 So.2d at 1365. This remark suggests that the Mississippi Supreme Court reweighed the aggravating and mitigating circumstances in this case— presumably by applying the proper definition to the "especially heinous" factor—and concluded that Clemons still should be sentenced to death. Alternatively, however, the court may have disregarded the "especially heinous" factor and affirmed on the ground that, as a matter of law, a single valid aggravating factor supports a sentence of death. In accordance with this approach, the court noted that its precedent "established unequivocally ... that when one aggravating circumstance is found to be invalid or unsupported by the evidence, a remaining valid aggravating circumstance will nonetheless support the death penalty verdict." *Id.* at 1362. While this language may imply merely that the Mississippi courts do not *automatically* invalidate a death sentence when an aggravating circumstance is found to be invalid, it arguably indicates that Mississippi appellate courts affirm all death sentences that are supported by at least one valid aggra-

---

**8.** In both Mississippi and Florida, a death sentence may be imposed only when the aggravating circumstances "outweigh" the mitigating circumstances. *See* Fla.Stat. § 921.141(2), (3) (1989); Miss.Code Ann. § 99–19–101(3)(c) (Supp.1990). Mississippi and Florida are therefore known as "weighing" states.

**9.** Clemons argued that the Mississippi Supreme Court, in affirming his sentence, denied him his

right to a trial by jury, as guaranteed by the sixth amendment and made applicable to the states through the fourteenth amendment.

**10.** Clemons argued that the Mississippi Supreme Court, in affirming his sentence, acted arbitrarily, in violation of the eighth amendment as applied to the states through the fourteenth amendment.

vating circumstance. Finally, in another portion of the opinion, the court's language corresponds with *Chapman* harmless error analysis. According to the Mississippi Supreme Court, it was *"beyond a reasonable doubt* that the jury's verdict would have been the same with or without the 'especially heinous, atrocious or cruel' aggravating circumstance." *Id.* at 1364 (emphasis added); *see Clemons,* — U.S. at ——, 110 S.Ct. at 1451.[11] Because of the ambiguity, the Court remanded the case to the Mississippi Supreme Court for further proceedings and, presumably, for a determination of the basis upon which Clemons' sentence was affirmed.

*Clemons* thus stands for the proposition that state appellate courts in weighing states [12] may independently weigh aggravating and mitigating circumstances and thereby cure certain errors that might have occurred at the sentencing phase of a trial; they may act as sentencers. The question then becomes whether the Florida Supreme Court acted as a sentencer in the case at hand.

### III. The Florida Supreme Court as Sentencer.

Given the holding of *Clemons* and the cases preceding it, we know that the Florida Supreme Court constitutionally may act as a sentencer by independently reweighing aggravating and mitigating circumstances. I show in this section that although the Florida Supreme Court sometimes has assumed this role, it did not purport to do so on this occasion.

### A.

The Florida Supreme Court has stated several times that it does not reweigh evidence when reviewing a death sentence. *See, e.g., Hudson v. State,* 538 So.2d 829, 831 (Fla.), *cert. denied,* — U.S. ——, 110

S.Ct. 212, 107 L.Ed.2d 165 (1989). In *Brown v. Wainwright,* 392 So.2d 1327 (Fla.) (per curiam), *cert. denied,* 454 U.S. 1000, 102 S.Ct. 542, 70 L.Ed.2d 407 (1981), the court stated unequivocally that its "role after a death sentence has been imposed is 'review,' a process qualitatively different from sentence 'imposition.'" *Id.* at 1331. According to the court, it has two discrete functions, the first involving review of the procedural history of the case and the second involving proportionality review. *Id.* The court went on to explain that

[n]either of our sentence review functions, it will be noted, involves weighing or reevaluating the evidence adduced to establish aggravating and mitigating circumstances.... If the findings of aggravating and mitigating circumstances are ... supported [by the record], if the jury's recommendation was not unreasonably rejected, and if the death sentence is not disproportionate to others properly sustainable under the statute, the trial court's sentence must be sustained even though, had we been triers and weighers of fact, we might have reached a different result in an independent evaluation.

*Id.* (footnote omitted).

Despite the Florida Supreme Court's protestations to the contrary, the court has engaged in what the United States Supreme Court would term "sentencing" or "reweighing." First, the Florida Supreme Court, like the Mississippi Supreme Court, engages in proportionality review on direct appeal. *See id.* As the Court in *Clemons* noted, proportionality review requires "weighing aggravating and mitigating evidence." — U.S. at ——, 110 S.Ct. at 1448; *see Ford,* 696 F.2d at 837 (Tjoflat, J., concurring in part and dissenting in part) (proportionality review is a form of sentencing because court considers sentencing stan-

---

11. The court, however, never referred specifically to "harmless error analysis" nor did its conclusion—that the error was harmless—conform with Mississippi Supreme Court precedent. And even if the court did conduct harmless error analysis, it is still unclear whether it held that the sentence would have been the same even if there had been no "especially heinous"

instruction or that the sentence would have been the same even if the especially heinous aggravating circumstance had been properly defined in the jury instructions. *See Clemons,* — U.S. at ——, 110 S.Ct. at 1451.

12. *See supra* note 8.

dards not considered by the original sentencer). In essence, proportionality review involves comparing the balance between aggravating and mitigating circumstances in the case at hand with the balance in other cases (not considered by the jury in recommending, or the trial judge in fashioning, the sentence to be given) in which the death penalty has been imposed. Thus, the court uses its prior cases to establish sentencing norms with which it tests each new case. Such a normative process, by definition, requires the court to weigh aggravating and mitigating circumstances— circumstances, moreover, that are not considered by the advisory jury and sentencing judge.

Furthermore, the Supreme Court has expressly recognized an instance in which the Florida Supreme Court acted as an independent sentencer or reweigher. In *Wainwright v. Goode*, 464 U.S. 78, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983) (per curiam), the state trial judge may have relied on an aggravating factor that was not included in Florida's statutory list of permissible aggravating factors.[13] After his sentence was affirmed on direct appeal, *Goode v. State*, 365 So.2d 381 (Fla.1978), Goode unsuccessfully sought habeas corpus relief in the Florida Supreme Court, *Goode v. Wainwright*, 410 So.2d 506 (Fla.1982) (per curiam). Goode sought the same relief in federal district court, and it too denied him the writ. This court, however, reversed and granted Goode relief on the ground that his sentence was imposed in an arbitrary and capricious manner because the trial judge considered an impermissible aggravating circumstance. *Goode v. Wainwright*, 704 F.2d 593 (11th Cir.1983). The Supreme Court, however, took a different approach. It first noted that on direct appeal to the Florida Supreme Court, the court independently weighed the evidence in the case and compared the aggravating and mitigating circumstances with those in other cases. 464 U.S. at 86, 104 S.Ct. at 383 (the Florida Supreme Court had stated: "Comparing the aggravating and mitigating circumstances with those shown in oth-

er capital cases and weighing the evidence in the case sub judice, our judgment is that death is the proper sentence." 365 So.2d at 384–85). The Court then held that

> [w]hatever may have been true of the sentencing judge, there is no claim that in conducting its *independent reweighing of the aggravating and mitigating circumstances* the Florida Supreme Court considered [the impermissible aggravating circumstance]. Consequently, there is no sound basis for concluding that the procedures followed by the State produced an arbitrary or freakish sentence forbidden by the Eighth Amendment.

*Id.* 464 U.S. at 86–87, 104 S.Ct. at 383 (emphasis added). In essence, the Supreme Court held that the Florida Supreme Court had acted as a reweigher or sentencer and thereby cured the error committed by the trial judge.

We learn from these cases an important lesson: the Florida Supreme Court's definition of "sentencer" and "reweigher" is different from the United States Supreme Court's definition of those terms. For example, although the Florida Supreme Court has stated that it never reweighs aggravating and mitigating circumstances, the United States Supreme Court has stated that a form of reweighing occurs every time a state court conducts proportionality review. Additionally, the Supreme Court has held that a state appellate court, by independently reweighing the aggravating and mitigating circumstances, may cure constitutional sentencing errors. Consequently, we must analyze what the Florida Supreme Court did in this case, not necessarily what it says it has done in prior cases, particularly since the court has not had an opportunity to characterize its role in light of *Clemons*.

**B.**

In light of these principles of interpretation, I analyze what the Florida Supreme Court did in this case. In characterizing the *Hitchcock* error at issue, the Florida

---

**13.** *See* Fla.Stat. § 921.141(5).

Supreme Court found that the jury had heard all of the defendant's mitigating evidence but that, because of the prosecutor's arguments and the judge's instructions, the jury considered this evidence exclusively within the statutory categories.[14] According to the court, Booker argued that, "even though the evidence concerning his mental and emotional condition did not rise to the level of statutory mitigating circumstances, with the proper instructions the jury would have found it sufficient to recommend against death, and the judge would have accepted the jury's recommendation." *Booker*, 520 So.2d at 249. The court rejected this argument because in its view, even without the erroneous instruction and the prosecutor's comment, the jury would still have recommended death and the judge would still have accepted its recommendation. *Id.* "[I]t would be unreasonable," the court held, "to conclude that even though the jurors did not find the mitigating evidence strong enough to offset the aggravating circumstances and thereby recommend life imprisonment, they would have done so had they realized that the same evidence could be considered as nonstatutory as well as statutory mitigation." *Id.*

The court's holding, that Booker was not prejudiced by the trial court's *Hitchcock* error, represents a substantial departure from the very cautious approach to second-guessing the jury exhibited in other Florida Supreme Court cases. In accordance with those prior decisions, the court could not hold that if the jury had heard all of the nonstatutory mitigating evidence and considered it independently of the statutory

categories, it still would have recommended the death penalty.[15] Nor could the court be sure that, absent the *Hitchcock* error, the judge would have sentenced Booker to death whatever the jury's recommendation might have been. According to its case-law, the court should have determined that the error was prejudicial and have granted the writ.

Two explanations can be posited for this judicial aberration. The first is that the Florida Supreme Court, acting as a pure reviewing court, conducted harmless error analysis and simply acted arbitrarily—this is the position implicitly adopted by the majority.[16] If this explanation is correct, then it follows that the majority's conclusion is also correct. I cannot conceive of a situation in which a pure reviewing court would not be acting arbitrarily in affirming a death sentence after finding a sentencing error that relates, as the error does here, to the balancing of aggravating and mitigating circumstances. It is simply impossible to tell what recommendation a properly instructed jury would have made or the decision the sentencing judge would have reached.

The second explanation is that the Florida Supreme Court reweighed the aggravating and mitigating circumstances in this case—including the nonstatutory mitigating circumstances that the advisory jury and sentencing judge failed to consider—and concluded that Booker still should be sentenced to death. The Supreme Court's decision in *Clemons* recognizes that a state appellate court can resentence and thereby cure trial court error—the Florida Supreme Court could have exercised this power, re-

---

**14.** *See supra* note 1.

**15.** In fact, several Florida Supreme Court cases suggest, seemingly as a matter of law, that when one aggravating circumstance is invalidated and there is some evidence of mitigation a death sentence should be vacated and the case should be remanded for a new sentencing hearing. *See, e.g., Long v. State,* 529 So.2d 286, 293 (Fla. 1988) (per curiam); *Menendez v. State,* 368 So.2d 1278, 1282 (Fla.1979); *Riley v. State,* 366 So.2d 19, 22 (Fla.1978) (per curiam); *Ellege v. State,* 346 So.2d 998, 1002–03 (Fla.1977). In those cases, the court reasoned that it could not affirm the sentence because it simply could not

know for sure what the advisory jury and, later, the sentencing judge would have done in the absence of the invalidated aggravating circumstances. Therefore, it could not find the error harmless.

**16.** The majority, by omitting discussion of the *Clemons* issue, perhaps assumes that Florida's high court always acts as a pure reviewing court. This position is untenable, however, in light of *Goode v. Wainwright,* in which the United States Supreme Court held that the Florida Supreme Court acted as a resentencer as that term is understood by the Court.

sentencing Booker and curing the sentencing court's *Hitchcock* error. Although the court's result more closely corresponds with this approach than with a harmless error approach, it is clear that, in framing its analysis, the court undertook a purely reviewing function. After determining that a *Hitchcock* error occurred during the sentencing phase of the case, the court states that, "the only remaining question is whether such error can be considered *harmless*." *Id.* at 248 (emphasis added). It then concluded:

> We are convinced beyond a reasonable doubt that even with the proper jury instruction and without the prosecutor's compounding comment, the jury would not have made a recommendation for life imprisonment. There was simply no non-statutory mitigating evidence sufficient to offset the aggravating circumstances upon which the jury could have reasonably predicated such a recommendation. We are also convinced beyond a reasonable doubt that the judge would have sentenced Booker to death regardless of the jury's recommendation and that an override would have been consistent with the rationale of *Tedder v. State*, 322 So.2d 908 (Fla.1975).

*Id.* at 249 (citation omitted).[17] Taken as a whole, the Florida Supreme Court's opinion demonstrates that the court only intended to undertake harmless error analysis of the *Hitchcock* error—an analysis that the court conducts in its capacity as a pure reviewing court under the strict criterion of *Chapman v. California*. Under this analysis, unless the court can say for sure that the error at issue would have made no difference to the outcome of the sentencing hearing, the court cannot hold that the error was harmless. If, without such certainty, the court holds an error harmless, its decision is arbitrary and, therefore, unconstitutional. That is the conclusion that I must reach in this case. Although the Florida Supreme Court had the power to resentence Booker and cure the error, it chose not to exercise it.

When an appellate court purports to act only as a pure reviewing court under *Chapman*, we will not articulate a state law premise that would have allowed that court constitutionally to reach the same result—that is the state appellate court's responsibility. Only where some ambiguity surrounds the court's rationale and we are therefore unable to frame the federal constitutional question at issue will we remand the case, as in *Clemons*, to the state court and allow it to articulate which approach it

---

**17.** This language should be contrasted with that utilized by the state supreme courts in *Clemons* and *Goode;* in both of those cases, the state supreme court suggested that, in conducting its proportionality review on direct appeal, the court intended or may have intended to reweigh the aggravating and mitigating circumstances in a manner that would have cured the constitutional defect that arose in the trial court. In *Goode*, for example, the Florida Supreme Court stated that "[c]omparing the aggravating and mitigating circumstances with those shown in other capital cases and weighing the evidence in the case sub judice, our judgment is that death is the proper sentence." 365 So.2d at 384–85. And in *Clemons*, the Mississippi Supreme Court stated that "[i]n our opinion ..., the punishment of death is not too great when the aggravating and mitigating circumstances are weighed against each other." 535 So.2d at 1365. This type of ambiguous language is not found in the present case. Here, the court carefully delineated its discussion in accordance with harmless error review.

It is of no moment, however, that the present proceedings involve a collateral attack on Booker's sentence rather than a direct appeal of it. When the court holds that new mitigating evidence would not have swayed the advisory jury and sentencing judge, it also should hold that on direct appeal it would have affirmed the sentence in light of the new evidence. Surely it would be anomalous for the Florida Supreme Court to uphold a sentence of death in collateral proceedings that it would not have upheld on direct appeal.

Thus, the supreme court, after finding that the *Hitchcock* error was harmless, logically should have determined, as a second step, whether Booker's death sentence was proportionate to the death sentences in its other cases, considering the nonstatutory mitigating evidence that the trial court ignored. If the court had undertaken this type of proportionality review in the habeas proceedings, then it might well have been acting as a resentencer under *Clemons*—just as it would have been if the case were before it on direct appeal. Here, however, the Florida Supreme Court did not purport to undertake any type of proportionality review, and that is how we also must approach the case.

646

adopted. Here, there simply was no ambiguity.

### C.

After carefully reviewing the Florida Supreme Court's opinion in this case, it is obvious that the court conducted harmless error review of Booker's death sentence. Since the court could not determine with certainty what the jury's recommendation or the judge's decision would have been if the nonstatutory mitigating evidence had been considered properly, I believe that, in accordance with the majority opinion, we must affirm the district court's disposition of the case.